1  DALE M. CENDALI (admitted for all purposes 11/30/93)
   DIANA M. TORRES (State Bar No. 162284)
2  O'MELVENY & MYERS LLP
   400 South Hope Street
3  Los Angeles, CA  90071-2899
   Telephone:  (213) 430-6000
4  Facsimile:  (213) 430-6407

5  Attorneys for Plaintiffs
   The United States Olympic Committee and
6  the International Olympic Committee

7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10

11  The United States Olympic          Case No.
    Committee and the International
12  Olympic Committee,                 **COMPLAINT**

13            Plaintiffs,

14        v.

15  Does 1-10, inclusive,

16            Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

                                                    COMPLAINT

Plaintiffs, the United States Olympic Committee ("USOC") and the International Olympic Committee ("IOC"), by their attorneys, O'Melveny & Myers LLP, complain and allege as follows:

## NATURE OF THE ACTION

1.      This is an action concerning Defendants' use of Plaintiffs' valuable intellectual property on seven websites to advertise the sale of tickets to the 2008 Summer Olympic Games in Beijing, China.  On information and belief, the tickets Defendants offer for sale do not exist, will not be delivered, or, in the case of the Opening and Closing Ceremony tickets, cannot be used even if they do exist and are delivered.  These claims arise under the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §220501 *et seq.*; the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; and the statutory and common law of the State of California, where plaintiffs are suffering injury and defendants are committing wrongful acts as hereinafter averred.

## THE PARTIES

2.      Plaintiff USOC is a non-profit, federally-chartered corporation with its principal place of business at One Olympic Plaza, Colorado Springs, Colorado 80909-5780.  It is the coordinating body for the Olympic Movement in the United States and is recognized by the IOC as the National Olympic Committee for the United States.  It trains and underwrites expenses for United States athletes at the Olympic and Paralympic Games, as well as determines which United States city may present a bid to host the Olympic and Paralympic Games.  The mission of the USOC is to support United States Olympic and Paralympic athletes in achieving sustained competitive excellence and preserve the Olympic ideals, and thereby inspire all Americans.  In 1950, the USOC was granted a federal charter, now codified as the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §220501 *et seq.* ("OASA").

3.      Plaintiff IOC is an international, non-governmental, non-profit

organization organized and existing under the laws of Switzerland with its principal place of business at Chateau de Vidy, Lausanne, 1007 Switzerland.  The IOC was founded on June 23, 1894 by Baron Pierre de Coubertin as the umbrella organization of the Olympic Movement.  In 1896, the first Olympic Games of the modern era were hosted in Athens, Greece under the IOC's direction.  Since then, the IOC has continued to supervise the organization of the Olympic Games, including 25 Olympic Summer Games and 20 Olympic Winter Games.

4.     Although Defendants purport to be doing business as "XLH" and "X.L. & H. Ltd.", as set forth below, the true names and capacities of the Defendants named herein as Does 1-10, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs will seek leave to amend this Complaint to allege their true names and capacities when they are ascertained.  Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants is liable to Plaintiffs for the wrongful conduct alleged herein.  Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each defendant acting individually, jointly, and severally.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to Title 28 U.S.C. Sections 1331, 1338(a) and (b), and 1367(a).

6.     This Court has personal jurisdiction over the Defendants pursuant to California's long-arm statute, Cal. Code Civ. Proc. 410.10, because they have sufficient "minimum contacts" with the state of California such that the exercise of personal jurisdiction would comport with the requirements of due process.  Defendants have committed tortious acts within this judicial district, including by defrauding a consumer in San Francisco, California, as alleged below.  Defendants also have business contacts with companies located in California,

COMPLAINT

1  including (1) ServePath, an Internet Service Provider that hosts six of Defendants'

2  websites, through which they conduct their infringing and unlawful activity; (2) the

3  domain name registry Verisign, which operates the infrastructure supporting

4  Defendants' domain names ending with the top-level domains .com and .net; and

5  (3) Google, operator of the email server gmail, with which Defendants have

6  registered bulkregisterdomains@gmail.com, the listed email address on WHOIS

7  records for Defendants' websites.  Thus, Defendants have purposefully availed

8  themselves of the privileges of conducting their business activities in the state of

9  California such that they should reasonably anticipate being haled into court here.

10         7.      Venue is proper in this judicial district pursuant to Title 28

11  U.S.C. Section 1391(b)(2) because a substantial part of the events giving rise to

12  these claims occurred in this district.  As discussed below, a private investigator

13  employed by Plaintiffs visited Defendants' websites from San Francisco,

14  California, and purchased tickets to two events in the Beijing Games.  The

15  investigator requested expedited delivery of the tickets using a credit card with a

16  billing address in San Francisco, but the purchased tickets were never delivered.

17  Venue is also proper in this judicial district pursuant to Title 28 U.S.C. Section

18  1391(b)(2) because, on information and belief, a substantial part of the property that

19  is the subject of this action is situated in this district, given that six of Defendants'

20  websites are hosted by an Internet Service Provider located in San Francisco.

21                          **THE PLAINTIFFS' VALUABLE RIGHTS**

22  **Background**

23         8.      The first modern Olympic Games were held in Athens in 1896.

24  The Games have continued since that time.  The 2008 Beijing Olympic Summer

25  Games will begin with Opening Ceremonies on August 8, 2008, will feature

26  numerous athletic events over a period of sixteen days, and will conclude with

27  Closing Ceremonies on August 24, 2008.

28         9.      The goal of the modern Olympic Movement is to contribute to

COMPLAINT

building a peaceful and better world by educating youth through sport practiced without discrimination of any kind, in a spirit of friendship, solidarity and fair play. The Olympic Movement encompasses organizations, athletes, and other persons who agree to be guided by the Olympic Charter.  These include the IOC (the Olympic Movement's umbrella organization), the international sports federations (non-governmental organizations responsible for the international administration of one or more sports), the USOC and other National Olympic Committees (organizations that lead the Olympic Movement within each country), the Organizing Committees of the Olympic Games, local clubs, and persons belonging to them, particularly the athletes.

10.    As part of their efforts to further the Olympic Movement, Plaintiffs and the other National Olympic Committees spend significant resources on efforts to promote the upcoming Olympic Games, directly and via their marketing partners.  The USOC and its sponsors have spent nearly $900 million in television advertising during NBC's broadcasts of the last two Olympic Games, and will spend $437 million during the 2008 Olympic Games this summer.  The USOC itself will spend more than $1.5 million in promoting the U.S. Olympic Team prior to and during the 2008 Olympic Games.

**The Olympic Marks**

11.    Since 1896, Plaintiffs have used certain trademarks in connection with the Olympic Games, including the word OLYMPIC and the well-known Olympic Rings symbol.  In addition, Plaintiffs also use specific marks in connection with each Olympic Games.  Those marks include City & Year Marks, such as SYDNEY 2000, ATHENS 2004, TORINO 2006, and BEIJING 2008, and various symbols, logos, taglines, and other marks.

12.    In the United States, the intellectual property rights to the words and symbols associated with the Olympic Games are statutorily protected by the OASA.  *See* 36 U.S.C. §220506(a).  The OASA grants to the USOC the "exclusive

right to use" various marks associated with the Olympic Games.  It further authorizes the USOC to pursue a civil action against any person who uses the protected marks, *inter alia,* "for the purpose of trade" or "to induce the sale of any goods or services."  36 U.S.C. §220506(c).

13.    The marks protected by the OASA include the word OLYMPIC, as well as "any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by, the International Olympic Committee, the International Paralympic Committee, the Pan-American Sports Organization, or the [USOC]."  36 U.S.C. §220506(a)(4), (c)(3) and (c)(4).

14.    In addition to the USOC's rights under the OASA, Plaintiffs also own statutory and common-law trademark rights to the words, symbols, and other marks they have diligently sought to protect.

15.    The USOC owns U.S. Trademark Registration Nos. 968,566, 2,311,493, and 2,777,890 for the word mark OLYMPIC.

16.    The IOC registered the word mark BEIJING 2008, as reflected in the U.S. Trademark Registration Nos. 2,739,492 and 2,764,102, and has assigned ownership rights over those registrations to the USOC.

17.    The IOC also registered, and assigned to the USOC, U.S. Trademark Registration No. 3,043,229 for the official emblem of the Beijing 2008 Olympic Games, which consists of a stylized human figure design ("Human Figure Logo"), the words "Beijing 2008" written in a unique calligraphy typeface ("Beijing 2008 Word Design"), and the Olympic rings symbol, as depicted below:



18.    The above marks ("Olympic Marks") are extremely valuable

COMPLAINT

1  assets to Plaintiffs because of the goodwill they represent and because Plaintiffs'

2  revenues are derived principally from licensing their intellectual property through

3  marketing, licensing and sponsorship programs encompassing the use of the

4  Olympic Marks and from the sale of television rights for broadcasting the Olympic

5  Games.  The IOC also receives a portion of the revenue derived from the sale of

6  each ticket to the Beijing Games.

7      19.    The USOC receives only very limited, specific funding from the

8  United States' government.  The IOC receives no funding from any government,

9  and much of the revenues that it collects are redistributed to National Olympic

10  Committees and international sports federations to train and support their athletes

11  and promote the Olympic Movement.  Thus, the protection of the Olympic Marks is

12  essential to Plaintiffs' continued ability to help promote and coordinate the

13  Olympic Games and thereby further the Olympic Movement.

14  **Authorized Tickets to the Beijing 2008 Olympic Games**

15      20.    The Beijing Organizing Committee for the Olympic Games

16  ("BOCOG") allots to National Olympic Committees a certain number of tickets to

17  events in the Olympic Games, carefully considering each country's population,

18  proximity to the Games, the number of athletes in each sport, past experience, and

19  numerous other factors.  The USOC and the other National Olympic Committees

20  are responsible for coordinating the sales of tickets in each country, subject to the

21  approval of the IOC and BOCOG.

22      21.    Tickets to the 2008 Olympic Games in Beijing were first offered

23  for sale in April 2007.  Prices for tickets are intentionally kept low so as to allow

24  many people as possible to experience the Olympic Games ceremonies and

25  competitions, while still generating revenue sufficient to support the staging of the

26  Games.  Thus, the average price for tickets to sports events in the Beijing Games is

27  just $11.

28      22.    The USOC has an exclusive sponsorship agreement with Global

COMPLAINT

Sports Consultants, L.L.C. d/b/a Jet Set Sports or CoSport that governs the sales of all authorized tickets to the 2008 Beijing Olympic Games in the United States.  Jet Set Sports and CoSport are the only official providers with the right to distribute and sell Olympic tickets and hospitality packages in the United States, and to use Olympic trademarks in the United States to promote and sell such hospitality and travel packages for the 2008 Beijing Olympic Games.

23.    All tickets to the Olympic Games are intended to be nontransferable by the purchasing customer.  The terms and conditions printed on the back of each ticket states, "You cannot resell or trade your Ticket."

24.    For security reasons, tickets to the Opening and Closing Ceremonies have been specially designed to prohibit, to the greatest extent possible, counterfeiting and speculative ticket reselling.  Specifically, each ticket to the Opening and Closing Ceremonies for the upcoming Games is embedded with a microchip containing the ticket's serial number, which can then be read by a database maintained by BOCOG to retrieve the bearer's photograph, passport details, addresses, e-mail addresses, and telephone numbers.  Tickets to the Opening and Closing Ceremonies may be transferred once, but only if both the original purchaser and the transferee fill out and submit a form requiring specific identifying information to BOCOG by June 30th, 2008.

## THE DEFENDANTS' UNLAWFUL CONDUCT

**Defendants' Websites Use the Olympic Marks**

25.    Defendants, on information and belief, operate seven websites (the "Websites") offering for sale what they claim to be tickets to the 2008 Beijing Olympic Games.  One of the Websites, which is located at http://www.beijingticketing.com (the "Primary Website"), is the medium through which users may purchase the tickets, as explained below.  The other six websites operated by Defendants (the "Secondary Websites") do not sell tickets, but they do advertise tickets for sale and contain numerous hyperlinks connecting the user to

the Primary Website at the point of purchase.  The Secondary Websites are located at http://www.beijingolympic2008tickets.com, http://www.olympic-tickets.net, http://www.beijingolympictickets2008.com, http://www.2008-0lympics.com, http://www.olympicticketsbeijing2008.com, and http://www.buy-olympic-tickets.co.uk.

26.    The Secondary Websites are all identical in appearance.  The Primary Website looks slightly different than the Secondary Websites, but shares a similar layout and color scheme, uses the same logos and marks, and offers the same tickets for sale.

27.    The Olympic Marks are used on the Websites and in the Websites' domain names without Plaintiffs' consent.  The Websites prominently display in several locations a logo of a stylized human figure that closely resembles Plaintiffs' Human Figure Logo.  Directly below each instance of that logo, the Websites also display the words "Beijing 2008" in a typeface that closely resembles the Beijing 2008 Word Design, as shown below:



This combination of marks is prominently displayed in three places on the Primary Website's home page and two places on the home page of each of the Secondary Websites.

28.    The Websites also repeatedly use the word marks OLYMPIC and BEIJING 2008 without Plaintiffs' authorization.

29.    Each of the Secondary Websites uses the mark OLYMPIC in its domain name; one of those Websites also uses the BEIJING 2008 mark without Plaintiffs' authorization.

30.    The sole purpose of the Websites is to sell tickets to the

Olympic Games.  The Websites offer no other good or service.  Thus, every instance of the Websites' use of the Olympic Marks appears in the context of an offer to sell tickets.

**Defendants Are Offering To Sell Tickets They Cannot Transfer And Likely Do Not Possess**

31.     The home page of each Website contains links to subpages for 39 categories of Olympic events, including the Opening and Closing Ceremonies and 37 categories of individual athletic competitions.  Each subpage offers a variety of tickets within each category, including tickets to each day of the competition and frequently including several pricing options depending on where the seats are located at the event.  The tickets offered for sale on the Websites range in price, from as low as $100 for early individual competitions, to as high as $2150 per ticket for the Opening Ceremonies.  When a user clicks on the links provided to purchase the tickets, the user is redirected to a subpage of the Primary Website to select and purchase tickets.

32.     Plaintiffs are informed and believe, and based thereon allege, that tickets offered for sale on the Websites, and purchased from the Primary Website, are largely, if not entirely, nonexistent.

33.     Several customers have attempted to purchase tickets using the Primary Website, believing it to be a source of legitimate tickets to the 2008 Opening Ceremony.  One such consumer who purchased tickets from the Primary Website, and had heard of the security procedures associated with the tickets, became suspicious of the validity of Defendants' tickets and attempted to cancel his purchase.  He exchanged various emails with Defendants regarding his concerns and questioning information on the Websites that he learned was inaccurate.  Defendants responded, "Instead of asking questions and going around the houses and spending silly amounts of time in emailing us and trying to catch out after booking, why don't you just ask for your money back and for us to cancel your

COMPLAINT

order instead of trying to make yourself a private detective and wasting your time and ours." The consumer then sought to cancel his order and followed up four times, but Defendants simply ignored his requests. The Website did not ask for, and this consumer did not provide, his photograph, passport details, addresses, e-mail addresses, and telephone numbers, all of which are required by BOCOG for admission, even with a valid ticket, to the Opening Ceremonies. Accordingly, this consumer cannot receive from Defendants a ticket that will gain him admission to the Opening Ceremonies.

34.    Another customer that purchased tickets to the Opening Ceremony became similarly suspicious that Defendants would be unable to provide legitimate tickets, given the identification and photograph requirements for Opening Ceremony tickets. He also sent a series of emails to Defendants regarding his concerns and attempted to contact them by phone, and received no response.

35.    Yet another customer, also suspicious that the Opening Ceremony tickets he had purchased from Defendants were fraudulent, received an email from Defendants claiming that "As our tickets come directly from the sponsors no name id or photo pictures are required on the ticket." He then contacted CoSport, which informed him that Defendants' claim was incorrect and that *all* tickets to the Opening Ceremony are embedded with a microchip linked to a photograph and passport information. Not surprisingly, Defendants ignored that customer's subsequent efforts to contact them.

36.    On information and belief, other consumers have complained about tickets sold on other websites operated by these same Defendants (also using the name XLH). Among the complainants cited in one news article were fans escorted from their seats by security guards when it was discovered that the tickets they had purchased from Defendants to another type of event had been stolen, and another purchaser who received no tickets at all, only an empty envelope.

37.    A private investigator employed by Plaintiffs visited the Primary

1  Website.  He purchased one ticket to the Opening Ceremony and one ticket to the

2  event "Kayak Flatwater," spending a total of $1905.  His credit card has been

3  charged for the tickets he ostensibly purchased, but he has not received them.

4          38.    After completing the transaction, he attempted to contact the

5  Websites' operator using the email address provided on the Primary Website to

6  inquire as to the status of his order and whether the Website needed more

7  information from him.  When he received no response to his inquiries, he attempted

8  to call Defendants several times to request that his order be expedited as provided

9  for on the Website, but without success.  Each time he called, he either received

10 looping tape (a menu with choices that repeat over and over, regardless of which

11 option you select), or the phone rang repeatedly for several minutes and then

12 ultimately disconnected.  He made yet another inquiry by email and, this time, was

13 told that the Website was "busy" and that his expedited ticket order would not be

14 shipped until July 25, 2008.

15         39.    The Website did not ask for, and the investigator did not

16 provide, his photograph, or passport details, required by BOCOG's policy for

17 admission, even with a valid ticket, to the Opening Ceremony.  Accordingly, this

18 investigator cannot receive from Defendants a ticket that will gain him admission to

19 the Opening Ceremony.

20 **Plaintiffs Will Suffer Irreparable Harm From Defendants' Continuing**
**Conduct**
21

22         40.    Plaintiffs are filing this action to stop Defendants'

23 misappropriation of their valuable intellectual property to deceive innocent

24 customers.  Not only will such customers be harmed by Defendants' conduct, but

25 Plaintiffs will also be harmed in numerous ways.

26         41.    First, Defendants' conduct threatens the Olympic brand that

27 Plaintiffs have worked so hard to build and protect.  If the Olympic Marks are

28 permitted to be used in connection with fraudulent criminal activity, they will be

COMPLAINT

tarnished in the public eye. Individual customers who purchase tickets from Defendants and do not receive them will likely be soured on their experience attempting to go to the Olympic Games, and may not attend future Games or purchase licensed merchandise, when, instead, they could have purchased from authorized channels. Indeed, customers who are defrauded by a site that uses the Olympic Marks will likely be wary in the future of trusting even authorized sites and vendors using the Olympic Marks, because they will have no assurance that the use of the Olympic Marks does, in fact, denote an authorized agent of the USOC. Given Plaintiffs' dependence on the value of their intellectual property to fund its mission, it is imperative that the Olympic brand be protected from the Defendants' efforts to undermine that brand for their own economic gain to the detriment of the Olympic Movement.

42.     Defendants also injure Plaintiffs' relationships with their sponsors. The USOC's exclusive partner for ticket sales, Jet Set Sports, suffers directly by having to compete with unauthorized ticket sellers. Both the USOC and the IOC have numerous other sponsors in the United States who have paid substantial sums to be associated with the Olympic brand, the value of which is being threatened by Defendants' activity. Defendants' conduct, if allowed to continue, will likely adversely affect Plaintiffs' ability to attract such sponsors and sponsorship revenues in the future.

43.     Finally, the unauthorized sales of tickets (whether nonexistent or not) will affect authorized ticket sales by Jet Set Sports. Even as of this late date, there are tickets available for purchase in the United States as part of hospitality packages. Consumers who purchase (or believe they have purchased) tickets from Defendants are less likely to purchase such packages, and the USOC, which receives certain revenue from Jet Set Sports based on ticket sales, suffers directly as a result of Defendants' conduct.

COMPLAINT

**Defendants' Efforts to Conceal Their Identities**

44.     Defendants are misleading the public as to their true identities and contact information, in an apparent effort to remain anonymous and evade prosecution for their illicit conduct.

45.     Each of the Websites lists XLH or X.L. & H. Ltd. as the owner of the site and further states that XLH is a Delaware corporation, with an address at 2415 Camelback Road, Suite 700, Phoenix, Arizona, and a phone number that begins with +44, the code for London, UK.  Despite this contention, XLH is not a corporation organized in Delaware or Arizona, nor does it have a physical address at 2415 Camelback Road, Suite 700, Phoenix, Arizona.  In fact, that address is the address for a law firm.

46.     Despite Defendants' efforts to conceal their identities, sufficient information is available to confirm that they have defrauded, and will continue to defraud, consumers in California and throughout the United States.  Six of the seven Websites are registered with domain names ending in .com or .net, which are top-level domains commonly used in the United States.  Prices for tickets offered on the Websites are all expressly stated in U.S. dollars.  And, as explained above, they have multiple contacts with corporations within the state of California, and have completed confirmed sales of tickets they cannot deliver to consumers in the state of California.

## FIRST CLAIM FOR RELIEF

### Unauthorized Use of the Olympic Marks
### In Violation of 36 U.S.C. § 220506(a) and (c)

47.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 46.

48.     Defendants use the Olympic Marks including by using the word OLYMPIC and logos and other marks that falsely represent association with or authorization by Plaintiffs on the Websites and by using various combinations of

COMPLAINT

the word marks OLYMPIC and BEIJING 2008 in the Websites' domain names.

49.  Plaintiffs have not consented to Defendants' use of the Olympic Marks.

50.  Defendants use the Olympic Marks for the purpose of trade and to induce the sale of goods.

51.  Plaintiffs are entitled, pursuant to §220506(c) of the OASA, for all of the remedies available under the Lanham Act, which include treble damages, costs, and attorneys' fees.

52.  Plaintiffs have no adequate remedy at law.  The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill.  Accordingly, Plaintiffs are entitled to injunctive relief, and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651.

## SECOND CLAIM FOR RELIEF

**Infringement of Registered Trademarks
In Violation of Section 32(1) of the Lanham Act,
37 U.S.C. §1114(1)**

53.  Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 52.

54.  Plaintiffs' federal trademark registrations for the Human Figure Logo, the Beijing 2008 Word Design, and the word marks OLYMPIC and BEIJING 2008 are in full force and effect.

55.  The display of logos, symbols, words, and other marks on the Websites and in the Websites' domain names, as alleged herein, constitutes the use in interstate commerce, without Plaintiffs' consent, of reproductions, counterfeits, copies, and colorable imitations of Plaintiffs' registered marks in connection with the sale, offering for sale, distribution, and advertising of goods.

COMPLAINT

56.     Such use is likely to cause confusion, to cause mistake, or to deceive consumers regarding the source of Defendants' goods, as they are likely to lead the public to conclude incorrectly that Defendants' tickets originated with, or are sponsored or authorized by Plaintiffs, to the damage and harm of Plaintiffs and the public.

57.     Defendants have acted willfully, with the intent to trade upon the goodwill and reputation of Plaintiffs, and with the intent to cause confusion, to cause mistake, and to deceive.

58.     Plaintiffs are entitled to all of the remedies available under the Lanham Act, including treble damages, costs, and attorneys' fees.

59.     Plaintiffs have no adequate remedy at law.  The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill.  Accordingly, Plaintiffs are entitled to injunctive relief, and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651.

### THIRD CLAIM FOR RELIEF

**False Endorsement or Association and False Designation of Origin
In Violation of Section 43(a) of the Lanham Act,
37 U.S.C. §1125(a)**

60.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 59.

61.     By using them on the Websites and in the Websites' domain names, as alleged herein, Defendants use in commerce logos, symbols, words, and other marks that falsely designate the origin of its goods and use false or misleading descriptions of facts and false or misleading representations of facts, which are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods and commercial activities by Plaintiffs.

COMPLAINT

62.    Defendants' activities are likely to lead the public to conclude incorrectly that Defendants are endorsed by or associated with Plaintiffs, or that Defendants' tickets originated with, or are sponsored or authorized by, Plaintiffs, to the damage and harm of Plaintiffs and the public.

63.    Defendants have acted willfully, with the intent to trade upon the goodwill and reputation of Plaintiffs, and with the intent to cause confusion, to cause mistake, and to deceive.

64.    Plaintiffs are entitled to all of the remedies available under the Lanham Act, including treble damages, costs, and attorneys' fees.

65.    Plaintiffs have no adequate remedy at law.  The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill.  Accordingly, Plaintiffs are entitled to injunctive relief, and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651.

## FOURTH CLAIM FOR RELIEF

**False Advertising**
**In Violation of Section 43(a) of the Lanham Act,**
**37 U.S.C. §1125(a)**

66.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 65.

67.    The Websites use in commerce logos, symbols, words, and other marks that falsely designate the origin of Defendants' goods and use false or misleading descriptions of facts and false or misleading representations of facts, which, in commercial advertising or promotion, misrepresent the nature, characteristics, and qualities of Defendants' goods.

68.    Defendants' conduct has harmed Plaintiffs' ability to conduct its business.  In addition to harming the market for Olympic tickets through legitimate

COMPLAINT

channels of trade, Defendants' conduct is also likely to damage the Olympic experience for consumers who purchased nonexistent tickets, many of whom may expend significant sums to travel to Beijing and then discover that they will be unable to attend the Games.  Such consumers may be less likely to purchase other Olympic-related merchandise and less likely to purchase tickets to future Olympic Games.  Thus, the competitive injury suffered by Plaintiffs will go far beyond tickets sales for the upcoming Olympic Games in Beijing.

69.    Defendants have acted willfully, with the intent to deceive the public regarding the nature, characteristics, and qualities of the tickets they offer for sale.

70.    Plaintiffs are entitled to all of the remedies available under the Lanham Act, including treble damages, costs, and attorneys' fees.

71.    Plaintiffs have no adequate remedy at law.  The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill.  Accordingly, Plaintiffs are entitled to injunctive relief, and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651.

### FIFTH CLAIM FOR RELIEF

**Cybersquatting**
**In Violation of Section 43(d) of the Lanham Act,**
**37 U.S.C. §1125(d)**

72.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 71.

73.    Defendants have registered and used domain names that incorporate words and phrases that are both (1) protected by reason of 36 U.S.C. § 220506 and (2) identical, confusingly similar to, and dilutive of Plaintiffs' registered trademarks.

74.    Defendants have a bad faith intent to profit from their use of the

Olympic Marks, which they have used primarily with the intent to divert consumers from legitimate online locations for sales of authorized Olympic tickets to their own sites accessible under the Defendants' domain names that could harm the business and goodwill represented by the marks for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Defendants' web sites.

75.    Defendants have provided false and misleading contact information when applying for the registration of the domain names, have intentionally failed to maintain accurate contact information, and have demonstrated a pattern of such conduct.

76.    Defendants have registered or acquired multiple domain names which Defendants know are identical to, confusingly similar to and/or dilutive of Plaintiffs' marks.

77.    Defendants have extensively incorporated Plaintiffs' marks into their respective domain names.

78.    Defendants are entitled to an order that Defendants' domain names be forfeited, cancelled, or transferred to Plaintiffs pursuant to 37 U.S.C. §1125(d)(1)(C).

## SIXTH CLAIM FOR RELIEF

**Trademark Infringement and Unfair Competition**
**In Violation of California Common Law and**
**California Business & Professions Code §§ 17200 *et seq*.**

79.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 78.

80.    This claim arises under California Business & Professions Code §§ 17200 *et seq*. and the common law of this state relating to trademark infringement, unfair competition, and palming off.  This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition joined with a substantial and related claim

COMPLAINT

under the Trademark Laws of the United States, and under the principles of supplemental jurisdiction as set forth at 2 U.S.C. § 1367.

81.     Plaintiffs own all rights, title, and interest in and to the distinctive Olympic trademarks, by virtue of their good-faith, extensive use and in commerce and licensing of those marks.

82.     Defendant's Websites incorporate matter that constitute replicas and imitations of Plaintiffs' marks.  Such unauthorized use by Defendants of Plaintiffs' marks constitutes trademark infringement and unfair competition and is hence unlawful.  Defendants' conduct is also fraudulent in that Defendants are using Plaintiffs' marks to falsely represent that they are authorized by or associated with Plaintiffs and are selling legitimate tickets to Olympic events when, in fact, they are not.  Such conduct is also inherently unfair and is likely to cause confusion and mistake in the minds of the purchasing public as to Defendants' association or affiliation with Plaintiffs and the source of the tickets sold by Defendants, as they are likely to lead the public to conclude incorrectly that Defendants' tickets originated with, or are sponsored or authorized by Plaintiffs, to the damage and harm of Plaintiffs and the public.

83.     Defendants' acts entitle Plaintiffs to general and special damages under California common law for all of Defendants' profits derived from their unlawful conduct to the full extent provided for by the common law of the State of California.  Defendants' acts also entitle Plaintiffs to restitution and attorneys' fees under California Business and Professions Code § 17200.

84.     Plaintiffs have no adequate remedy at law.  The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill.  Accordingly, Plaintiffs are entitled to injunctive relief.

## SEVENTH CLAIM FOR RELIEF

**False Advertising
In Violation of California Statutory Law,
California Business & Professions Code §§ 17500 *et seq*.**

85.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 84.

86.    Defendants' activities constitute wrongful dissemination before the public of the State of California of untrue and misleading statements.

87.    Upon information and belief, such statements were known, or with the exercise of reasonable care, should have been known, by Defendants to be untrue and misleading, and were made with the intent to induce customers to purchase the products of Defendants.

88.    Defendants have acted willfully, with the intent to engage in unfair competition with Plaintiff, and as such Defendants' conduct is malicious and oppressive.

89.    Defendants' conduct has harmed Plaintiffs' ability to compete with Defendants.  In addition to harming the market for Olympic tickets through legitimate channels of trade, Defendants' conduct is also likely to damage the Olympic experience for consumers who purchased nonexistent tickets, many of whom may expend significant sums to travel to Beijing and then discover that they will be unable to attend the Games.  Such consumers may be less likely to purchase other Olympic-related merchandise and less likely to purchase tickets to future Olympic Games.  Thus, the competitive injury suffered by Plaintiffs will go far beyond tickets sales for the upcoming Olympic Games in Beijing.

90.    Defendants' acts entitle Plaintiffs to restitution under California Business and Professions Code § 17535.

91.    Plaintiffs have no adequate remedy at law.  The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business,

COMPLAINT

reputation and goodwill.  Accordingly, Plaintiffs are entitled to injunctive relief under California Business and Professions Code § 17535.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

92.    That Defendants, their agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participating with any of them be immediately and permanently enjoined, pursuant to 15 U.S.C. § 1116(a), from:

a.    displaying the Olympic Marks, or any terms, logos or images that are confusingly similar thereto, on the Websites or any other website;

b.    directly or indirectly infringing the Olympic Marks in any manner including, but not limited to, advertising, selling, and/or offering for sale any tickets or any other goods or services, that infringe said trademarks;

c.    engaging in any conduct that tends falsely to represent, or is likely to confuse, mislead, or deceive members of the public into believing, that the actions of Defendants, the tickets sold by Defendants, or Defendants themselves are connected with Plaintiffs, are sponsored, approved, or licensed by Plaintiffs, or are in some way connected or affiliated with Plaintiffs;

d.    affixing, applying, annexing, or using in connection with tickets or any other goods or services, a false description or representation, including words or other symbols, tending falsely to describe or represent such goods or services as being those of Plaintiffs;

e.    otherwise competing unfairly with Plaintiffs in any manner;

f.    registering and maintaining any domain name which

bears, incorporates or utilizes on any level the Olympic Marks or any terms which are confusingly similar thereto;

   g. effecting assignments or transfers, forming new entities or associations or utilizing any other means or device for the purpose of circumventing or otherwise avoiding prohibitions set forth in subparagraphs (a) through (f);

  93. That Defendants' domain names be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651 or, in the alternative, that Defendants be required to forfeit, cancel, or transfer to Plaintiffs any domain name which incorporates any of the Olympic Marks pursuant to 37 U.S.C. §1125(d)(1)(C).

  94. That Defendants account for and pay over to Plaintiffs all damages sustained by Plaintiffs from lost sales of genuine Olympic tickets and other Olympic-related merchandise, and profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

  95. That Defendants account for and pay over to Plaintiffs, in accordance with California law, all damages sustained by Plaintiffs and profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and prejudgment interest and that those profits be increased as provided by law;

  96. That Plaintiff recover from Defendants its reasonable attorneys' fees and costs of suit under 15 U.S.C. § 1117;

  97. That Defendants, within ten days after the service of the judgment herein, be required to file with this Court and serve upon Plaintiffs' attorneys, a written report under oath setting forth in detail the manner in which they have complied with the judgment; and

1          98.    That Plaintiffs have all other and further relief as the Court may

2    deem just and proper under the circumstances.

3

4          Dated:  July 22, 2008

5                                           O'MELVENY & MYERS LLP

6

7                                           By: _Diana M. Torres/cw_____

8                                               Diana M. Torres

9                                           Attorneys for Plaintiffs
                                            The United States Olympic Committee and
                                            the International Olympic Committee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28