1   DALE M. CENDALI (admitted for all purposes 11/30/93)
    DIANA M. TORRES (SBN 162284)
2   O'MELVENY & MYERS LLP
    400 South Hope Street
3   Los Angeles, CA  90071-2899
    Telephone:  (213) 430-6000
4   Facsimile:   (213) 430-6407
    dtorres@omm.com
5
    Attorneys for Plaintiffs
6   The United States Olympic Committee and
    the International Olympic Committee
7

8               **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10

11  The United States Olympic           Case No.
    Committee and the International
12  Olympic Committee,                  **PLAINTIFFS' MEMORANDUM OF
                                        POINTS AND AUTHORITIES IN
13                  Plaintiffs,         SUPPORT OF THEIR MOTION FOR A
                                        TEMPORARY RESTRAINING ORDER
14      v.                              AND EXPEDITED DISCOVERY**

15  Does 1-10, inclusive,

16                  Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

SF1:722639.1                           MEMO OF P'S & A'S IN SUPPORT OF TRO AND
                                                     EXPEDITED DISCOVERY

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT .......................................................................... 1

II.     STATEMENT OF FACTS .............................................................................. 2

    A.    The Plaintiffs' Valuable Rights ......................................................... 2

    B.    Authorized Tickets to the Beijing 2008 Olympic Games .................... 4

    C.    The Defendants' Unlawful Conduct ...................................................... 5

    D.    Defendants Are Offering to Sell Tickets They Cannot Legitimately Transfer and Likely Do Not Possess ............................... 6

    E.    Defendants' Efforts to Conceal Their Identities ................................. 8

III.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS ......................................................................................... 9

    A.    Defendants Are Engaging in Unfair Business Practices ...................... 9

    B.    The Olympic and Amateur Sports Act Grants Exclusive Use of the Olympic Marks to the USOC ...................................................... 10

    C.    The Lanham Act Precludes Defendants' Fraudulent and Infringing Conduct ........................................................................... 11

        1.    Defendants' Conduct Constitutes Infringement Under the Lanham Act ....................................................................... 11

    D.    Defendants' Conduct Constitutes False Endorsement and False Advertising .............................................................................. 16

    E.    By Using Plaintiffs' Trademarks in Their Domain Names, Defendants Are in Violation of the Anti-Cybersquatting Protection Act ..................................................................................... 18

IV.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE COURT DOES NOT GRANT THE REQUESTED RELIEF ..................... 19

    A.    Plaintiffs Can Show Irreparable Harm ............................................... 19

        1.    The Balance of Hardships Favors Plaintiffs, and There Are Fair Grounds for Litigation ................................................ 21

        2.    The Harm to Plaintiffs Far Outweighs Any Possible Harm to Defendants ...................................................................... 21

        3.    The Public Interest Favors an Injunction ................................. 22

V.      PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY SHOULD BE GRANTED ............................................................................ 23

    A.    Expedited Discovery Is Warranted Under the Federal Rules of Civil Procedure ............................................................................. 23

    B.    Expedited Discovery Is Warranted Under This Court's Local Rules .................................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*AMF, Inc. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ............................................................. 13, 14, 15, 16

*Apple Computer, Inc. v. Formula Int'l, Inc.*,
  725 F.2d 521 (9th Cir. 1984) ................................................................. 14, 19, 21

*Apple Computer, Inc. v. Franklin Computer Corp.*,
  714 F.2d 1240 (3d Cir. 1983) ............................................................................ 22

*Apple Inc. v. Podfitness, Inc.*,
  2008 U.S. Dist. LEXIS 45241 (N.D. Ca. 2008) ................................................. 13

*Au-Tomotive Gold, Inc. v. Volkswagon of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006) ..................................................................... 12, 13

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
  174 F.3d 1036 (9th Cir. 1999) .................................................... 13, 14, 15, 22

*California Independent System Operator Corp. v. Reliant Energy
  Services, Inc.*, 181 F. Supp. 2d 1111 (E.D. Cal. 2001) ...................................... 9

*Columbia Ins. Co. v. Seescandy.com*,
  185 F.R.D. 573 (N.D. Ca. 1999) ....................................................................... 24

*Concrete Mach. Co., Inc. v. Classic Lawn Ornaments*,
  843 F.2d 600 (1st Cir. 1988) ............................................................................ 22

*Dr. Seuss Enters., L.P. v. Penguin Books USA*,
  109 F.3d 1394 (9th Cir. 1997) .......................................................................... 15

*Eclipse Associates, Ltd. v. Data General Corp.*,
  894 F.2d 1114 (9th Cir. 1990) ..................................................................... 15, 16

*Gillespie v. Doe*,
  629 F.2d 637 (9th Cir. 1980) ............................................................................ 24

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) ...................................................... 9, 13, 14, 19, 21

*Johnson v. Connolly*,
  2007 U.S. Dist. LEXIS 31721 (N.D. Ca. Apr. 18, 2007) ............................ 18, 19

*K and N Engineering, Inc. v. Bulat*,
  259 Fed. Appx. 994 (9th Cir. 2007) ................................................................. 12

*My-T Fine Corp. v. Samuels*,
  69 F.2d 76 (2d Cir. 1934) ................................................................................. 21

*Newsguy, Inc. v. Yomtobian*,
  2006 U.S. Dist. LEXIS 93197 (N.D. Ca. Dec. 20, 2006) ................................. 15

*People v. Toomey*,
  157 Cal. App. 3d 1, 203 Cal. Rptr. 642 (1984) ................................................ 10

*Pepsico, Inc. v. Plank*,
  2002 U.S. Dist. LEXIS 14378 (C.D. Ca. Jul. 18, 2002) ................................... 18

*Podolsky v. First Healthcare Corp.*,
  50 Cal App. 4th 632, 58 Cal. Rptr. 2d 89 (1996) ............................................ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
   483 U.S. 522 (1987) ......................................................................... 11

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
   208 F.R.D. 273 (N.D. Ca. 2002) ...................................................... 23

*Sigma Dynamics, Inc. v. E. Piphany, Inc.*,
   2004 U.S. Dist. LEXIS 24161 (N.D. Ca. 2004) ............................... 17

*Smith v. Montoro*,
   648 F.2d 602 (9th Cir. 1981) ........................................................... 17

*U.S.O.C. v. Intelicense Corp.*,
   737 F.2d 263 (2d Cir. 1984) ............................................................ 10

*UMG Recordings, Inc. v. Does*,
   2006 U.S. Dist. LEXIS 32821 (N.D. Ca. 2006) ............................... 23

*V.E.W., Ltd. v. Karla Hour Couture*,
   1997 U.S. Dist. LEXIS 22742 (N.D. Ca. Dec. 16, 1997) ................. 22

*Wendt v. Host Int'l*,
   125 F.3d 806 (9th Cir. 1997) ........................................................... 17

*White v. Samsung Electronics America, Inc.*,
   971 F.2d 1395 (9th Cir. 1992) ......................................................... 17

## STATUTES

15 U.S.C. § 1114 ........................................................................................ 12

15 U.S.C. § 1115 ........................................................................................ 13

15 U.S.C. § 1125(a)(1)(A) .......................................................................... 17

15 U.S.C. § 1125(a)(1)(B) .......................................................................... 17

15 U.S.C. § 1125(d)(1)(A) .......................................................................... 18

36 U.S.C. § 220506 ....................................................................... 10, 11, 18

36 U.S.C. § 220506(a) ............................................................................... 11

36 U.S.C. § 220506(a)(4) ............................................................................. 3

36 U.S.C. § 220506(c) .................................................................................. 3

36 U.S.C. § 220506(c)(3) .............................................................................. 3

36 U.S.C. § 220506(c)(4) .......................................................................... 3, 11

Cal. Bus. & Prof. Code § 17200 *et seq.* .................................................. 9, 10

Cal. Bus. & Prof. Code § 17500 *et seq.* ..................................................... 10

Lanham Act § 32(1) ............................................................................... 12, 16

## OTHER AUTHORITIES

Fed. Pre-trial Civ. P.  CA 23.159 ............................................................... 24

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
EXPEDITED DISCOVERY

# TABLE OF AUTHORITIES

**Page**

## RULES

Fed. R. Civ. P. 26(d) ............................................................................................. 23

Fed. R. Civ. P. 45 ................................................................................................. 23

1    Plaintiffs, the International Olympic Committee ("IOC") and the United

2    States Olympic Committee ("USOC"), submit this memorandum of law in support

3    of their motion for a temporary restraining order to prevent Defendants from

4    continuing to deceive the public by using Plaintiffs' trademarks on seven Websites

5    ("XLH Websites") in order to solicit purchases of tickets to the 2008 Olympic

6    Games that they likely will not actually provide.  Plaintiffs also seek expedited

7    discovery to ascertain the truthful identity of those who operate these fraudulent

8    sites.

9    **I.    PRELIMINARY STATEMENT**

10    All across the globe, excitement is building as the world's top athletes

11    prepare to compete in the 2008 Beijing Olympic Games, a ritual that has been a part

12    of modern culture since 1896.  Defendants, who have gone to great lengths to

13    conceal their identities, seek to take advantage of that building excitement in the

14    Olympic Games, as well as the prestige associated with the IOC and USOC, to

15    deceive the public and tarnish Plaintiffs' reputation.  Such conduct must be

16    enjoined.

17    Defendants operate a series of Websites that prominently display Plaintiffs'

18    valid and protectable trademarks, as well as other indicia of the Olympic Games, in

19    order to mislead the public into believing that the sites are "official" Olympic sites

20    and thus are somehow affiliated with or sponsored by the USOC and IOC.  Under

21    this guise, Defendants use the Websites to advertise tickets to the upcoming

22    Olympic games, offering tickets at prices of anywhere from $100 to over $2,000.

23    Defendants, however, are advertising tickets that they do not have and/or are not

24    providing to individuals who use Defendants' Websites to place ticket orders.

25    Thus, Defendants' activity not only causes harm to the IOC and USOC, it also

26    greatly harms the public as well.

27    Defendants should not be permitted to continue this scheme.  They must be

28    enjoined from deceptively purporting to sell Olympic tickets by making use of

1  Plaintiffs' trademarks.

2  **II.     STATEMENT OF FACTS**

3      **A.     The Plaintiffs' Valuable Rights**

4      The USOC is the National Olympic Committee for the United States, and

5  coordinates the Olympic Movement in the United States, trains and underwrites

6  expenses for United States athletes at the Olympic Games and Paralympic Games,

7  and determines which United States city may present a bid to host the Olympic and

8  Paralympic Games.  (Burton Decl. ¶ 5.)[1]  The IOC is an international, non-

9  governmental, non-profit organization, founded on June 23, 1894 by Baron Pierre

10  de Coubertin, as the umbrella organization of the Olympic Movement.  (Stupp

11  Decl. ¶ 3.)  Since 1896, when the first modern games were held in Athens, Greece,

12  the IOC has supervised the organization of the Olympic Games.  (Id. ¶¶ 3-4.)

13      Since 1896, Plaintiffs and their predecessors have used certain words and

14  symbols in connection with the Olympic Games, including the word OLYMPIC

15  and the Olympic Rings symbol.  (Burton Decl. ¶ 8; Stupp Decl. ¶ 7.)  In addition,

16  Plaintiffs also use specific marks in connection with each Olympic Games.  Those

17  marks include City & Year Marks, such as SYDNEY 2000, ATHENS 2004,

18  TORINO 2006, and BEIJING 2008, and various symbols, logos, taglines, and other

19  marks.  (Burton Decl. ¶ 8; Stupp Decl. ¶ 7.)

20      In the United States, the intellectual property rights to the words and symbols

21  associated with the Olympic Games are statutorily protected by the Ted Stevens

22  Olympic and Amateur Sports Act (the "OASA").  *See* 36 U.S.C. §220506(a).  The

23  OASA grants to the USOC the "exclusive right to use" various marks associated

24  

---

25  [1] Citations herein to declarations accompanying this motion are referred to throughout as follows: "Burton Decl." refers to the declaration of Howard Burton dated July 18, 2008; "Stupp Decl." to

26  the declaration of Howard M. Stupp dated July 18, 2008; Mueller Decl." to the declaration of Peter Mueller dated July 17, 2008; "Lintumaa Decl." to the declaration of Kai Lintumaa dated

27  July 18, 2008; "Mueller Decl." to the declaration of  Peter Mueller dated July 18, 2008; "Plotts Decl." to the declaration of David Plotts dated July 17, 2008; the "Schneider Decl." refers to the

28  declaration of Courtney Schneider dated July 22, 2008; and "Dunbar Decl." to the declaration of Thomas Dunbar dated July 22, 2008.

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
EXPEDITED DISCOVERY

1   with the Olympic Games in the United States.  It further authorizes the USOC to

2   pursue a civil action against any person who uses the protected marks "for the

3   purpose of trade, to induce the sale of any goods or services, or to promote any

4   theatrical exhibition, athletic performance, or competition."  36 U.S.C. §220506(c).

5   The marks protected by the OASA include the word OLYMPIC, as well as "any

6   trademark, trade name, sign, symbol, or insignia falsely representing association

7   with, or authorization by, the International Olympic Committee, the International

8   Paralympic Committee, the Pan-American Sports Organization, or the [USOC]."

9   36 U.S.C. §220506(a)(4), (c)(3) and (c)(4) .

10       The USOC also owns U.S. Trademark Registration Nos. 968,566, 2,311,493,

11   and 2,777,890 for the word mark OLYMPIC, Registration Nos. 2,739,492 and

12   2,764,102 for the word mark BEIJING 2008 and Registration No. 3,043,229 for the

13   official emblem of the Beijing 2008 Olympic Games, consisting of a stylized

14   human figure design ("Human Figure Logo"), the words "Beijing 2008" written in

15   a unique calligraphy typeface ("Beijing 2008 Word Design"), and the Olympic

16   Rings symbol, as depicted below:



24   (Burton Decl. ¶ 9; Stupp Decl. ¶ 8.)

25       All of the above marks ("Olympic Marks") are valuable assets to Plaintiffs.

26   First, they represent the tremendous goodwill Plaintiffs have earned over the years.

27   Second, Plaintiffs' revenue comes primarily from the sale of rights to broadcast the

28   Olympic Games and their marketing, licensing and sponsorship programs involving

   MEMO OF P'S & A'S IN SUPPORT OF TRO AND
EXPEDITED DISCOVERY

1   the use of Plaintiffs' marks.  (Burton Decl. ¶ 10; Stupp Decl. ¶ 9.)  Thus, the

2   protection of the Olympic Marks under the OASA, the Lanham Act, and common

3   law is essential to Plaintiffs' continued ability to help promote and coordinate the

4   Olympic Games.  (Burton Decl. ¶ 10; Stupp Decl. ¶ 10.)

5           **B.     Authorized Tickets to the Beijing 2008 Olympic Games**

6           The 2008 Beijing Olympic Games will begin with the Opening Ceremony on

7   August 8, 2008, will feature numerous athletic events over a sixteen-day period,

8   and will conclude with the Closing Ceremony on August 24, 2008.  (Burton Decl. ¶

9   3; Stupp Decl. ¶ 4.)  Tickets to each of those events are in very high demand, and

10  spectators around the world have purchased such tickets through authorized

11  channels.  The IOC and the Beijing Organizing Committee for the Olympic Games

12  ("BOCOG") have delegated to the USOC the responsibility for coordinating all

13  sales of tickets in the United States for the upcoming 2008 Beijing Olympic Games.

14  (Burton Decl. ¶ 11; Stupp Decl. ¶ 11.)  The USOC has an exclusive sponsorship

15  agreement with Global Sports Consultants, L/L/C/ d/b/a Jet Set Sports or CoSport

16  that governs the sales of all authorized tickets to the 2008 Beijing Olympic Games

17  in the United States.  (Burton Decl. ¶ 12.)  Jet Set Sports and CoSport are the only

18  official providers with the right to distribute and sell Olympic tickets and

19  hospitality packages in the United States, and to use Olympic trademarks in the

20  United States to promote and sell such hospitality packages and tickets for the 2008

21  Beijing Olympic Games.  (Id.)

22          In the interests of security, and in an effort to prevent counterfeiting, each

23  ticket to the Opening and Closing Ceremonies of the Games is embedded with a

24  microchip containing the ticket's serial number, which corresponds to information

25  in a database maintained by BOCOG that contains the bearer's photograph,

26  passport details, addresses, e-mail addresses, and telephone numbers.  (Stupp Decl.

27  ¶ 14.)  These tickets may be transferred only once and only through a complex

28  procedure requiring both the original ticket purchaser and the transferee to submit

1  forms to BOCOG.  (Id.)  While the primary goal of this procedure is to maximize

2  security of the Games, it has the added benefit to the public of effectively

3  eliminating mass-scale speculative ticket reselling.  This is important to the

4  Olympic movement, as ticket prices for the Beijing Olympic Games were

5  intentionally set very low so as to allow as many people as possible to experience

6  the Olympic Games ceremonies and competitions, while still generating revenue

7  sufficient to support the staging of the Games.  (Stupp Decl. ¶ 12.)

8              **C.    The Defendants' Unlawful Conduct**

9        Defendants operate the seven Websites that offer for sale tickets to the 2008

10 Beijing Olympic Games that they do not actually possess.  One of the Websites,

11 which is located at http://www.beijingticketing.com ("Primary Website"), is the

12 medium through which consumers may purchase tickets Defendants will not

13 provide, as explained below.  Each of the other six websites operated by Defendants

14 ("Secondary Websites"), which are identical or nearly identical to each other in

15 appearance, advertise tickets for sale, and redirect users to the Primary Website at

16 the point of purchase.  The Secondary Websites are located at:

17        • http://www.beijingolympic2008tickets.com,

18        • http://www.olympic-tickets.net,

19        • http://www.beijingolympictickets2008.com,

20        • http://www.2008-0lympics.com,

21        • http://www.olympicticketsbeijing2008.com, and

22        • http://www.buy-olympic-tickets.co.uk.

23 The Primary Website is noticeably different in appearance than the Secondary

24 Websites, but shares a similar layout and color scheme, uses the same logos and

25 marks, and offers the same tickets for sale.  (See Lintumaa Decl. Exs. A, E.)

26        The Websites display, in numerous locations and without Plaintiffs' consent,

27 several of the Olympic Marks.  For example, the Websites prominently display in

28 several locations a logo of a stylized human figure that closely resembles Plaintiffs'

Human Figure Logo.  (See Lintumaa Decl., Exs. A, D.)  Directly below each instance of that logo, the Websites also display the words "Beijing 2008" in a typeface that closely resembles the Beijing 2008 Word Design, as depicted below:



This combination of marks is prominently displayed in three places on the Primary Website's home page and two places on the home page of each of the Secondary Websites.  (See id.)  The Websites also repeatedly use the word marks "Olympic" and "Beijing 2008."  (See id.)

The sole purpose of the Websites is to sell tickets to the Olympic Games. The Websites offer no other product or service.  (See id.)  Thus, every instance of the Websites' use of the Olympic Marks appears in the context of an offer to sell tickets.  The Websites' use of the Olympic Marks has achieved precisely what Defendants intended -- to mislead the public into believing that Defendants are operating an official Olympic ticket site.  As Forbes Traveler reported in February, 2008:

> The safest bet is to go through the official ticketing websites, including **www.beijingticketing.com**, www.chinaolympic2008tickets.com, and www.beijing-2008tickets.com, www.cosport.com, or en.beijing2008.cn.

(See Schneider Decl. Ex. A (emphasis added).)

**D.    Defendants Are Offering to Sell Tickets They Cannot Legitimately Transfer and Likely Do Not Possess**

The home page of each Website contains links to subpages for 39 categories of Olympic events, including the Opening and Closing Ceremonies and 37 categories of individual athletic competitions.  (See id.)  Each subpage offers a

1    variety of tickets within each category, including tickets to each day of the

2    competition and frequently including several pricing options depending on where

3    the seats are located at the event.  (See Lintumaa Decl. ¶ 3.)  The tickets offered for

4    sale on the Websites range in price, from as low as $100 for early individual

5    competitions, to as high as $2150 per ticket for the Opening Ceremonies.  (See id.)

6    When a user clicks on the links provided to purchase the tickets, the user is

7    redirected to a subpage of the Primary Website to select and purchase tickets.  (See

8    id. ¶¶ 2-3, 12-13.)  The Websites allow the user to request expedited delivery of the

9    tickets, but, once a purchase transaction is confirmed by the would-be purchaser, do

10   not actually provide tickets, on an expedited basis or at all.  (See id. ¶¶ 4, 6-11.)

11   Indeed, the Websites cannot offer tickets to the Opening and Closing Ceremony

12   tickets because of the security procedures outlined above, with which they make no

13   pretense of applying.

14          Several customers have attempted to purchase tickets using the Primary

15   Website, believing it to be a source of legitimate tickets to the 2008 Opening

16   Ceremony.  (Dunbar Decl. ¶¶ 2-3; Mueller Decl. ¶¶ 3-4; Plotts Decl. ¶¶3-4.)

17   However, none of these individuals has received tickets as a result of their orders.

18   (Dunbar Decl. ¶ 14; Mueller Decl. ¶ 18; Plotts Decl. ¶ 13.)  One such consumer

19   who purchased tickets from the Primary Website, and had heard of the security

20   procedures associated with the tickets, became suspicious of the validity of

21   Defendants' tickets and attempted to cancel his purchase.  (Mueller Decl. ¶¶ 10-15.)

22   He exchanged various emails with Defendants regarding his concerns, questioning

23   the information on the Websites that he learned was inaccurate.  (Id. ¶ 13.)

24   Defendants responded, "Instead of asking questions and going around the houses

25   and spending silly amounts of time in emailing us and trying to catch out after

26   booking, why don't you just ask for your money back and for us to cancel your

27   order instead of trying to make yourself a private detective and wasting your time

28   and ours."  (Id.)  The consumer did seek to cancel his order and followed up four

1  times, but Defendants simply ignored his requests.  (Id. ¶ 14.)

2      Another consumer who similarly placed a ticket order on the Primary

3  Website, believing it to be a source of legitimate tickets to the Opening Ceremony,

4  has also exchanged several emails with the site.  (Dunbar Decl. ¶¶ 2-3, 7-10, 12.

5  However, based on the responses he has received stating that no photo or passport

6  information is required for the Opening Ceremony ticket, he is doubtful that the

7  ticket that he ordered for $1,150, if he in fact receives it, will be legitimate.

8  (Dunbar Decl. ¶ 14).  Another consumer, after trying to obtain answers from the

9  Primary Website regarding his order, does not believe that the site will ever deliver

10  to him the tickets that he ordered to the Opening Ceremony.  (Plotts Decl. ¶ 13.)

11      To confirm that Defendants were fraudulently purporting to sell tickets,

12  Plaintiffs hired an investigator to attempt to purchase tickets from Defendants to

13  both the Opening Ceremonies and one individual event.  Plaintiffs' investigator

14  placed an order, specifying expedited delivery, and Defendants charged his credit

15  card.  (Lintumaa Decl. ¶¶ 2-6, 11.)  When he attempted to confirm that the tickets

16  would be delivered on an expedited basis, however, his inquiries were met with

17  silence.  (Id. ¶¶ 4-9.)  And, of course, he received no tickets.[2]  (Id. ¶ 11.)

18      **E.    Defendants' Efforts to Conceal Their Identities**

19      In an apparent effort to remain anonymous and evade prosecution for their

20  illicit conduct, Defendants are misleading the public as to their true identities and

21  contact information.  Each of the Websites, except www.buy-olympic-tickets.co.uk,

22  lists XLH or X.L. & H. Ltd. as the owner of the site and further states that XLH is a

23  Delaware corporation, with an address at 2415 Camelback Road, Suite 700,

24  Phoenix, Arizona, and a phone number that begins with +44, the code for London,

25
26
27
28

[2] Plaintiffs have reason to believe that Defendants are quite experienced in the business of deceiving consumers.  On information and belief, consumers have complained about tickets sold on other websites operated by these same Defendants (also using the name XLH).  Among the complainants cited in one news article were fans escorted from their seats by security guards when it was discovered that the tickets to other events they had purchased from Defendants had been stolen, and another purchaser who received no tickets at all, only an empty envelope.  (See Schneider Decl. Ex. B.)

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
    EXPEDITED DISCOVERY

UK.  (Lintumaa Decl. ¶ 14.)  Despite this contention, XLH is not a corporation organized in Delaware or Arizona, nor does it have a physical address at 2415 Camelback Road, Suite 700, Phoenix, Arizona.  In fact, that address is the address for several companies, including a law firm, but not for a ticket seller.  (Id.)

Despite Defendants' efforts to conceal their identities, sufficient information is available to confirm that they have deceived, and will continue to deceive, consumers in California and throughout the United States using Plaintiffs' Olympic Marks, and should be shut down immediately.

## ARGUMENT

A temporary restraining order is necessary in this case to bar Defendants from continuing to use Plaintiffs' valid marks to promote and sell phony tickets to the 2008 Beijing Olympic Games, causing irreparable harm to Plaintiffs as well as to the general public.  In order to obtain a temporary restraining order in the Ninth Circuit, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised for litigation and the balance of hardships tips sharply in favor of the moving party.  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1204-05 (9th Cir. 2000); California Independent System Operator Corp. v. Reliant Energy Services, Inc., 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) (standard for temporary restraining order is same as for obtaining preliminary injunction).

**III.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS**

**A.    Defendants Are Engaging in Unfair Business Practices**

California Business & Professions Code §17200 et seq. ("Section 17200") precludes a party from engaging in any unfair or fraudulent business practice.  An unfair business practice is found where the defendant's conduct offends an established public policy or is otherwise immoral or unethical, and a defendant's conduct will be considered "fraudulent" where members of the public are likely to

1    be deceived.  Podolsky v. First Healthcare Corp., 50 Cal App. 4th 632, 647, 58 Cal.

2    Rptr. 2d 89, 98 (1996).  The court will weigh the utility of the defendant's conduct

3    against the gravity of the harm.  Id.

4          Similarly, California Business & Professions Code §17500 et seq. ("Section

5    17500") precludes a party from making any false or misleading statement about a

6    product or service.  Section 17500 prohibits any person or entity from

7    communicating a statement to the public which is untrue or misleading, which that

8    party knew or should have known to be untrue or misleading.  People v. Toomey,

9    157 Cal. App. 3d 1, 16, 203 Cal. Rptr. 642, 652 (1984).  A statement is false or

10   misleading if members of the public are likely to be deceived.  Id.

11         As shown by the declaration of Kai Lintumaa, Plaintiffs here can easily make

12   the requisite showing to prevail on their claims under Sections 17200 and 17500.

13   Defendants, in direct competition with Plaintiffs and their authorized agents, are

14   purporting to solicit sales of tickets to the upcoming Olympic Games.  While it is

15   likely that Defendants have no actual tickets, it is clear that at least some of those

16   they are purporting to sell—for the Opening and Closing Ceremonies—are not

17   valid and will not gain the purchaser admission under BOCOG's policy.  Moreover,

18   in conjunction with these efforts, they advertise that they are "Official Partners,"

19   implying an official partnership with Plaintiffs.  It is difficult to imagine a more

20   compelling case of unfair business practices or false advertising under California

21   law.

22       **B.**    **The Olympic and Amateur Sports Act Grants Exclusive Use of the**

23           **Olympic Marks to the USOC**

24         Even if Defendants were selling genuine Olympic tickets, Plaintiffs would

25   still prevail on the merits of their claims.  Through the OASA, Congress has

26   granted the USOC the exclusive right to use and control the commercial use of

27   certain Olympic symbols.  36 U.S.C. § 220506; see U.S.O.C. v. Intelicense Corp.,

28   737 F.2d 263, 266-67 (2d Cir. 1984) (explaining that Congress intended to promote

      MEMO OF P'S & A'S IN SUPPORT OF TRO AND
EXPEDITED DISCOVERY

1  U.S. Olympic effort by providing USOC with "unfettered control over the

2  commercial use of Olympic-related designations" and finding violation of the Act

3  where defendant made commercial use of Olympic symbol without consent).  The

4  statute provides that without the consent of the USOC, any person who uses any of

5  the Olympic symbols "for purpose of trade, to induce the sale of any goods or

6  services, or to promote any theatrical exhibition, athletic performance, or

7  competition" is liable for damages in accordance with the remedies provided in the

8  Lanham Act.  36 U.S.C. § 220506(c)(4).  The protected symbols include, among

9  others, the words "Olympic" and "Olympiad," among others, or any combination of

10  these words "tending to cause confusion or mistake, to deceive, or to falsely suggest

11  a connection" with any Olympic activity, and any trademark, trade name, sign,

12  symbol, or insignia falsely representing association with the International Olympic

13  Committee.  36 U.S.C. § 220506(a).

14      The statute establishes, and the Supreme Court has affirmed, that the

15  protection afforded to Olympic symbols is broader than the rights provided under

16  the Lanham Act, effectively providing the USOC with an exclusive right in the

17  Olympic words and symbols.  San Francisco Arts & Athletics, Inc. v. U.S. Olympic

18  Comm., 483 U.S. 522, 535 (1987).  The statute does not require the USOC to prove

19  that a defendant's use is likely to cause confusion, nor does the statute incorporate

20  the defenses that are available under the Lanham Act.  Id.  Thus, the USOC has

21  exclusive right to the use of all Olympic symbols and marks, including Human

22  Figure Logo and the word marks "Beijing 2008" and "Olympic."  These exclusive

23  rights under OASA entitle Plaintiffs to injunctive relief here.

**C.   The Lanham Act Precludes Defendants' Fraudulent and**
**     Infringing Conduct**

**1.   Defendants' Conduct Constitutes Infringement Under the**
**      Lanham Act**

28  Even if 36 U.S.C. § 220506 did not mandate injunctive relief here (which it

does), Plaintiffs would still be entitled to the relief they seek.  Defendants in this
case are currently making unauthorized use of Plaintiffs' marks on the XLH
Websites, as well as other indicia of the Olympics, in an effort to mislead
consumers into believing that the sites are legitimate and are in fact associated with
the IOC and USOC.  Defendants use Plaintiffs' marks and claim to be an "Official
Partner" so as to dupe consumers into believing that they will actually receive
legitimate tickets.  Such deception of the public is forbidden by Section 32(1) of the
Lanham Act.

Section 32(1) proscribes the use in commerce of any "reproduction,
counterfeit, copy, or colorable imitation of a registered mark in connection with the
sale, offering for sale, distribution, or advertising of any goods or services on or in
connection with which such use is likely to cause confusion, or to cause mistake, or
to deceive."  15 U.S.C. § 1114; K and N Engineering, Inc. v. Bulat, 259 Fed. Appx.
994 (9th Cir. 2007) (affirming lower court's grant of summary judgment based on
determination that defendants' intentional use of plaintiff's mark was likely to
cause confusion); Au-Tomotive Gold, Inc. v. Volkswagon of Am., Inc., 457 F.3d
1062, 1075 (9th Cir. 2006).

Plaintiffs here can establish actionable infringement as they can demonstrate
(1) ownership of valid and legally protectable marks; (2) that Defendants "used"
those marks "in commerce;" (3) the "use in commerce" was in connection with the
sale, offering for sale, distribution, or advertising of goods and services;" and (4)
the infringing use was in a manner likely to confuse consumers.  15 U.S.C. § 1114.

First, as set forth above, Plaintiffs can establish that the marks at issue are
valid and protectable marks.  Plaintiffs' Human Figure Logo is registered with the
United States Patent and Trademark Office under Reg. No. 3,043,229.  Plaintiffs
have also registered the word marks "Beijing 2008" (Reg. Nos. 2,739, 492;
2,764,102) as well as "Olympic" (Reg. No. 968,566; 2,311,493; 2,777,890).
(Burton Decl. ¶ 9; Stupp Decl. ¶ 8.)  Such registrations constitute *prima facie*

1    evidence of the marks' validity.  15 U.S.C. § 1115; Au-Tomotive Gold, 457 F.3d at

2    1064 n.2 ("A registered mark is 'prima facie evidence . . . of the registrant's

3    exclusive right to use the registered mark in commerce'") (quoting 15 U.S.C. §

4    1115)).

5           Second, Plaintiffs can establish that by using Plaintiffs' marks on the XLH

6    Websites to sell tickets via the Internet to consumers nationwide, Defendants are

7    making use of the marks in commerce in connection with goods or services.  See

8    Au-Tomotive Gold, 457 F.3d at 1075 (finding use plaintiffs' trademarks in

9    connection with the sale of goods).

10           Third, Plaintiffs can also demonstrate the central element of trademark

11    infringement—likelihood of confusion, i.e., whether the similarity of the marks is

12    likely to confuse customers about the source of the products or services.

13    GoTo.com, 202 F.3d at 1205 (quotations omitted); Brookfield Communications,

14    Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1061 (9th Cir. 1999)

15    (finding a likelihood of confusion); Apple Inc. v. Podfitness, Inc., 2008 U.S. Dist.

16    LEXIS 45241, *7 (N.D. Ca. 2008) (finding defendant's use of "podfitness.com"

17    and "podfitness" to be likely to cause confusion with plaintiff's iPod Marks).

18           In determining likelihood of confusion, courts in this Circuit consider eight

19    factors: (1) strength of the mark; (2) proximity of the goods or services; (3)

20    similarity of the marks; (4) evidence of actual confusion; (5) marketing channels

21    used; (6) type of goods or services and the degree of care likely to be exercised by

22    the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of

23    expansion.  AMF, Inc. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979)

24    (finding that defendant's use of mark "Sleekcraft" for speedboats infringed

25    plaintiff's mark "Slickcraft" for recreational boats despite weakness of plaintiff's

26    mark and non-competitiveness of goods).[3]  In this case, each of the factors weighs

27

28    [3] This list of factors is intended to be a guide, and the court is neither required to consider all of these factors, nor limited to considering only these factors.  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000); Apple Computer, Inc. v. Formula Int'l,

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
EXPEDITED DISCOVERY

1  in favor of Plaintiffs. Collectively, they overwhelmingly demonstrate a likelihood

2  of confusion.

3      •    **Strength.** Here, there can be no question that Plaintiffs' marks are

4  strong: Plaintiffs and their predecessors have used their OLYMPIC mark for over

5  100 years and Plaintiffs and their licensees have continuously used the Human

6  Figure Logo and "Beijing 2008" marks for years and have devoted hundreds of

7  millions of dollars to an advertising campaign across the U.S. featuring the marks.

8  The USOC itself will spend more than $1.5 million in promoting the U.S. Olympic

9  Team prior to and during the 2008 Olympic Games. (Stupp Decl. ¶ 7.) In fact, the

10 Olympic Marks are so strong that Congress has granted exclusive use of those

11 marks in the United States -- without regard to traditional trademark defenses -- to

12 the USOC. As strong marks, the Olympic Marks are entitled to more protection

13 because they are more likely to be remembered and associated in the consumers'

14 minds with their owners. <u>Brookfield</u>, 174 F.3d at 1058 (citations omitted).[4]

15     •    **Relatedness of Goods or Services.** Here, because Defendants purport

16 to offer the <u>same</u> goods, <u>i.e.</u>, tickets to the 2008 Olympic Games, offered by the

17 USOC, through its agents, the parties' goods and services are highly related, and

18 thus this factor also favors Plaintiffs. <u>AMF</u>, 599 F.2d at 350 (where goods or

19 services are related, danger exists that public will mistakenly assume association

20 between producers).

21     •    **Similarity.** There can also be no question that Defendants are making

22 use of several images that are unmistakably similar to Plaintiffs' marks. First,

23 Defendants display on their Websites marks that closely resemble the Human

24 Figure Logo and the "Beijing 2008" mark, in nearly identical font, color, style and

25 size. The Websites also include other images that are similar to those made use of

26 by Plaintiffs and are evocative of the IOC and USOC, such as stylized stick figure

27 ────────────────────────

<u>Inc.</u>, 725 F.2d 521, 526 (9th Cir. 1984).

28 [4] The "strength" of a trademark is "evaluated in terms of its conceptual strength and commercial strength." <u>GoTo.com</u>, 202 F.3d at 1207 (citations omitted).

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
EXPEDITED DISCOVERY

designs that are used to represent each sporting event.  Thus, this critical factor

weighs in favor of Plaintiffs.  See, e.g., Newsguy, Inc. v. Yomtobian, 2006 U.S.

Dist. LEXIS 93197, *10-11 (N.D. Ca. Dec. 20, 2006) (finding similarity where the

marks differed only by the letter "s").

•       **Actual confusion.**  While proof of actual confusion is not a

prerequisite, Eclipse Associates, Ltd. v. Data General Corp., 894 F.2d 1114, 1118-

19 (9th Cir. 1990), as set forth more fully in the Dunbar, Mueller and Plotts

Declarations and in the article attached as Exhibit A to the Declaration of Courtney

Schneider, in which even Forbes Traveler believes BeijingTicketing.com is an

official website,[5] Plaintiffs have evidence of actual confusion, which "is persuasive

proof that future confusion is likely."  AMF, 599 F.2d at 352 (citations omitted).

Thus, this factor weighs in Plaintiffs' favor as well.[6]

•       **Marketing Channels.**  "Convergent marketing channels increase the

likelihood of confusion."  AMF, 599 F.2d at 353 (citations omitted).  Where, as

here, Plaintiffs and Defendants sell their services to the same pool of customers,

advertising in the same publications, this factor weighs in Plaintiffs' favor.

•       **Bad Faith.**  Here, the evidence of Defendants' bad faith is

overwhelming.  Defendants are deliberately using marks similar to Plaintiffs'

Olympic Marks and other images, such as stylized stick figures to represent the

various Olympic events to deceive consumers into believing that their Websites are

affiliated with or authorized by Plaintiffs and are therefore actually selling

legitimate tickets to the Olympic Games.  In addition, Defendants prominently state

on their sites that each XLH Website is an "Official Partner."  Defendants have also

---

[5] See Schneider Decl. Ex. A ("The safest bet is to go through the official ticketing websites, including www.beijingticketing.com, . . .")

[6] Actual confusion can be shown by mistaken purchasing decisions or by "initial confusion" where defendant's trademark captures initial consumer attention, even though no actual sale is finally completed as a result of the confusion.  Dr. Seuss Enters., L.P. v. Penguin Books USA, 109 F.3d 1394, 1405 (9th Cir. 1997).  Further, another form of confusion ensues when consumers wrongly assume that the service they were searching for is no longer offered, having been replaced by a competitor, and thus simply use the competitor's services.  Brookfield, 174 F.3d at 1057.

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
                                                EXPEDITED DISCOVERY

1    attempted to conceal their true identities, including by providing false contact

2    information on the sites and in their domain name registration information.

3        •    **Sophistication of Potential Consumers.**  Where the products are

4    identical and the marks are strongly similar, however, the sophistication of buyers

5    <u>cannot</u> be relied on to prevent confusion, and this factor will not mitigate the

6    likelihood of confusion.  <u>See</u>, <u>e.g.</u>, <u>Eclipse Associates</u>, 894 F.2d at 1118 ("The

7    district court had substantial evidence from which to determine that customers,

8    regardless of their sophistication, were likely to be confused by two computer

9    companies using the mark ECLIPSE . . . .").  Here, because Defendants are offering

10    identical goods using marks that are nearly identical to Plaintiffs', this factor also

11    weighs in favor of a finding of likelihood of confusion.

12        •    **Expansion into same market.**  In assessing likelihood of confusion,

13    "a 'strong possibility' that either party may expand his business to compete with the

14    other will weigh in favor of finding that the present use is infringing."  <u>AMF</u>, 599

15    F.2d at 354 (citations omitted).  Here, Defendants already purport to sell tickets for

16    the 2008 Olympics, which is precisely the domain of Plaintiffs and their

17    contractually-authorized agents.  Thus, this factor weighs in favor of Plaintiffs.

18                                        * * *

19        In sum, consideration of the relevant factors amply demonstrates that

20    Plaintiffs are likely to succeed on their claim that Defendants attempt to capitalize

21    on the success of Plaintiffs' business by using the same well-known trademarks for

22    the very services that Plaintiffs are already offering in violation of section 32(1) of

23    the Lanham Act.

24    **D.    Defendants' Conduct Constitutes False Endorsement and False**

25        **Advertising**

26        Defendants' false and misleading promotion and marketing of their Websites,

27    through the use of Plaintiffs' marks and other official indicia of the Olympics, to

28    sell phony tickets to the Olympic Games also warrant injunctive relief as such

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
                                        EXPEDITED DISCOVERY

1    conduct constitutes false endorsement and false advertising under the Lanham Act.

2    15 U.S.C. §1125(a)(1)(A); § 1125(a)(1)(B).  A false endorsement claim requires a

3    showing that: (1) goods or services were involved; (2) interstate commerce was

4    affected; and (3) there was a false designation of origin or false description of the

5    goods or services.  15 U.S.C. §1125(a)(1)(A).  In establishing the last factor, the

6    court will look for the plaintiff to show that there is a likelihood of confusion.

7    White v. Samsung Electronics America, Inc., 971 F.2d 1395, 1399 (9th Cir. 1992).

8         Plaintiffs can establish false endorsement here where Defendants are falsely

9    claiming to sell in interstate commerce tickets for the 2008 Beijing Olympics, using

10   Plaintiffs' registered Olympic marks and recognizable Olympic images, such as

11   stylized stick figures, and claiming that each site is an "Official Partner," to create

12   the misimpression that Plaintiffs endorse or in some way approve of the Websites

13   and authorize the sale of the tickets.  Based on such conduct, Defendants' use is

14   both likely to cause and actually has caused confusion, as discussed above.  Thus,

15   Plaintiffs are likely to prevail with respect to their false endorsement claim.  See

16   Wendt v. Host Int'l, 125 F.3d 806, 812 (9th Cir. 1997).

17        Plaintiffs can establish a false advertising claim by demonstrating that

18   Defendants: (1) use a false or misleading description of fact or representation of

19   fact; (2) in interstate commerce in connection with goods or services in commercial

20   advertising or promotion; and (3) it is likely that some harm will result from the

21   misrepresentation.  15 U.S.C. § 1125(a)(1)(B); Sigma Dynamics, Inc. v. E.

22   Piphany, Inc., 2004 U.S. Dist. LEXIS 24161, *6 (N.D. Ca. 2004).  The Ninth

23   Circuit also requires that the plaintiff show that the injury was "competitive," i.e.

24   harmful to the plaintiff's ability to compete with the defendant.  Smith v. Montoro,

25   648 F.2d 602 (9th Cir. 1981) (plaintiff with interest in misrepresentation at issue

26   has standing).

27        Plaintiffs can easily prevail on the merits of their false advertising claim.

28   Plaintiffs can show a competitive injury, as Defendants' conduct impacts Plaintiffs'

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
                                                                    EXPEDITED DISCOVERY

1    ability to sell tickets to the Olympic games; after all, every person who believes

2    he/she is buying a bona fide Olympic games ticket from Defendants is someone to

3    who could have bought a ticket from one of Plaintiffs' authorized agents.  Id.

4    Plaintiffs can also show that Defendants are falsely claiming that they are selling

5    *bona fide* tickets to the Olympic Games, using Plaintiffs' marks and other symbols

6    and claiming to be an "Official Partner" to lead consumers falsely to think that the

7    sites are legitimate and that the goods are authentic.  Pepsico, Inc. v. Plank, 2002

8    U.S. Dist. LEXIS 14378, *13 (C.D. Ca. Jul. 18, 2002) (finding false advertising

9    where defendant selling counterfeit soda, labeled with false ingredient and

10   nutritional information).  This constitutes false advertising.

11   **E.    By Using Plaintiffs' Trademarks in Their Domain Names,**

12   **Defendants Are in Violation of the Anti-Cybersquatting Protection**

13   **Act**

14       Defendants' deception also extends to the domain names that it makes use of

15   with respect to the sites www.2008-0lympics.com;

16   www.beijingolympictickets.com; www.beijingolympictickets2008.com;

17   www.olympic-tickets.net; and www.olympicticketsbeijing2008.com.  Such sites

18   make use of Plaintiffs' trademarks and constitute a violation of the Anti-

19   Cybersquatting Protection Act (the "ACPA").  A defendant is liable under the

20   ACPA to the owner of a protected mark if it has: (1) a bad faith intent to profit from

21   that mark, and (2) registers, traffics in, or uses a domain name that (3) is identical or

22   confusingly similar to plaintiff's mark, or protected by special legislation.  15

23   U.S.C. § 1125(d)(1)(A); see Johnson v. Connolly, 2007 U.S. Dist. LEXIS 31721,

24   *7 (N.D. CA. Apr. 18, 2007).

25       Here, Defendants have registered and used domain names that incorporate

26   words and phrases such as "Olympic" and "Beijing 2008" that are both

27   (1) protected by reason of 36 U.S.C. § 220506 and (2) identical, confusingly similar

28   to, and dilutive of Plaintiffs' registered trademarks.  Defendants also have a bad

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
EXPEDITED DISCOVERY

1  faith intent to profit from their use of these Olympic Marks, which they have used

2  primarily with the intent of financially benefiting from consumers seeking

3  legitimate online locations for sales of authorized Olympic tickets.  Such conduct

4  harms the goodwill represented by the marks for commercial gain by creating a

5  likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of

6  the Defendants' Websites.  See Johnson, 2007 U.S. Dist. LEXIS 31721 at *7-8

7  (ACPA violated where defendant registered www.fuzzyduds.com in bad faith with

8  intent to trade upon good will of plaintiff's mark "Cowboy's Fuzzy Duds").  As

9  further evidence of their bad faith, Defendants have also provided false and

10  misleading contact information when applying for the registration of the domain

11  names and has intentionally failed to maintain accurate contact information.  Thus,

12  Plaintiffs' can show a likelihood of success on their claim for cybersquatting.

13  **IV.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE**

14  **COURT DOES NOT GRANT THE REQUESTED RELIEF**

15  **A.    Plaintiffs Can Show Irreparable Harm**

16  In trademark infringement actions, the Ninth Circuit has held that once the

17  plaintiff has established a likelihood of confusion, irreparable harm is presumed.

18  GoTo.com, 202 F.3d at 1209.  This is because it is reasonable for the court to

19  assume that continuing infringement will leave the plaintiff with a loss of control of

20  its reputation and a loss of its goodwill.  Apple, 725 F.2d at 526.  Because they

21  have demonstrated a likelihood of success on the merits, Plaintiffs are entitled to a

22  presumption of irreparable harm.

23  Even absent the presumption, Plaintiffs can establish irreparable injury.

24  Defendants in this case are usurping Plaintiffs' well-established brand name and

25  good will and causing consumers to misidentify Plaintiffs' with Defendants'

26  fraudulent Websites.  Apple, 725 F.2d at 526 (continuing infringement would result

27  in irreparable injury based on a loss of control over reputation and loss of

28  goodwill).  Significantly, by using Plaintiffs' trademarks and purporting to offer

tickets to the 2008 Olympics nationwide through their Websites, Defendants are leading consumers to believe that Defendants are in some way associated with or approved by Plaintiffs when this is not the case. Such an association between Plaintiffs and Websites that are aimed at deceiving the public and fraudulently offering for sale tickets that are not even in their possession tarnishes Plaintiffs' image and threatens to turn the public off to the Olympics in general. In fact, those individuals who are deceived by Defendants' Websites will be less likely to purchase tickets to the Olympic Games in the future or purchase licensed merchandise.

In addition to these obvious harms, a significant source of irreparable injury lies in the fact that Defendants are lessening the value of Plaintiffs' intellectual property. Both the IOC and USOC rely primarily on the value of their intellectual property as a source of revenue. (Burton Decl. ¶ 10; Stupp. ¶¶ 9-10.) Thus, Plaintiffs depend upon the sale of broadcasting rights as well as marketing, licensing and sponsorship programs related to the use of Plaintiffs' marks as sources of financial support. (Id.) By making use of Plaintiffs' marks in this manner, Defendants' conduct diminishes the value of these rights. Defendants' infringing activity thus threatens to substantially reduce the amount of funding available to Plaintiffs as sponsors and licensees may be less willing to pay as much for the right to use Plaintiffs' marks.

Defendants' conduct also injures Plaintiffs' relationships with their sponsors and others, such as Jet Set Sports, which suffers directly by having to compete with unauthorized ticket sellers. As of this date, while tickets to individual events are sold out, there are still some tickets available for purchase in the U.S. as part of hospitality packages. Consumers who purchase tickets from Defendants are less likely to purchase such packages, and the USOC, which receives some incremental revenue from Jet Set Sports based on ticket sales, suffers directly as a result of Defendants' conduct. (Burton Decl. ¶ 16 ; Stupp Decl. ¶ 9.) Thus, Plaintiffs will

1    be irreparably harmed if Defendants' infringement is not enjoined.

2            **1.    The Balance of Hardships Favors Plaintiffs, and There Are**

3                    **Fair Grounds for Litigation**

4            Because Plaintiffs have shown that they are likely to succeed on the merits

5    and that they are likely to suffer irreparable injury absent an injunction, it is not

6    necessary for the Court to consider whether the balance of hardships tips decidedly

7    in favor of Plaintiffs and whether there are fair grounds for litigation.  See

8    GoTo.com, 202 F.3d at 1209 ("Because GoTo has prevailed under this avenue for

9    obtaining injunctive relief, we need not decide whether there exist serious questions

10   on the merits or whether the balance of hardships tips sharply in favor of GoTo.").

11   Nevertheless, Plaintiffs can satisfy the alternate test as well: as set forth above,

12   there are fair grounds for litigation, and, as set forth below, the balance of hardships

13   weighs strongly in Plaintiffs' favor.

14           **2.    The Harm to Plaintiffs Far Outweighs Any Possible Harm to**

15                   **Defendants**

16           There can be no question that the balance of the hardships tips decidedly in

17   favor of Plaintiffs.  As Plaintiffs have described above, if the Court allows

18   Defendants to continue to use Plaintiffs' marks in connection with their suspect

19   business venture, Plaintiffs will be irreparably injured.  See GoTo.com, 202 F.3d at

20   1209; Apple Computer, 725 F.2d at 526.  In contrast, Defendants have no

21   legitimate business interest to protect.  In fact, Defendants' business appears to be

22   one built on deliberately infringing conduct.  Where the intent to infringe is clear,

23   even if the defendant's entire business was built upon the infringing mark, the

24   balance of hardships weighs in favor of the plaintiff.  See My-T Fine Corp. v.

25   Samuels, 69 F.2d 76, 78 (2d Cir. 1934) (Hand, J.) ("were it not for the intent to

26   trade unfairly, we might hesitate, but advantages built upon a deliberately

27   plagiarized make-up do not seem to us to give the borrower any standing to

28   complain that his vested interests will be disturbed"); Concrete Mach. Co., Inc. v.

1   Classic Lawn Ornaments, Inc., 843 F.2d 600, 612 (1st Cir. 1988) (internal

2   quotations and citations omitted) ("[w]here the only hardship that the defendant will

3   suffer is lost profits from an activity which has been shown likely to be infringing,

4   such an argument in defense merits little equitable consideration . . . . Such

5   considerations apply even to a business which is exclusively based on an infringing

6   activity and which would be virtually destroyed by a preliminary injunction.");

7   Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3d Cir.

8   1983), cert. dismissed, 464 U.S. 1033 (1984) (internal citations omitted) (if

9   defendant's reliance on infringing activity for survival barred issuance of

10  injunction, "a knowing infringer would be permitted to construct its business

11  around its infringement, a result we cannot condone.").

12              **3.      The Public Interest Favors an Injunction**

13          In addition to the concerns of Plaintiffs and Defendants, this Court may also

14  consider the public interest in the balance of hardships in an unfair competition suit.

15  See Brookfield, 174 F.3d at 1066 ("Preliminary injunctive relief is appropriate here

16  to prevent irreparable injury to Brookfield's interests in its trademark 'MovieBuff'

17  and to promote the public interest in protecting trademarks generally as well.").

18  Here, consumers are being led to believe there is a relationship between Plaintiffs

19  and Defendants, when in reality none exists.  Further, consumers are at risk of being

20  deceived if they actually seek to purchase tickets using Defendants' site as they

21  may lose hundreds or even thousands of dollars and not receive legitimate tickets to

22  the Olympic Games.  Thus, the public interest militates against allowing

23  Defendants to continue to confuse consumers in this fashion.  See V.E.W., Ltd. v.

24  Karla Hour Couture, 1997 U.S. Dist. LEXIS 22742, *6 (N.D. Ca. Dec. 16, 1997)

25  (preliminary injunction  in public interest where defendant used counterfeits of

26  plaintiffs' Vera Wang trademarks and logos in connection with sale of wedding

27  dresses).

28

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
                                                                   EXPEDITED DISCOVERY

1    **V.    PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY SHOULD**
2          **BE GRANTED**

3          **A.    Expedited Discovery Is Warranted Under the Federal Rules of**
4                  **Civil Procedure**

5          This Court has broad discretion to grant expedited discovery.  Fed. R. Civ. P.

6    26(d).  In determining whether expedited discovery should be granted, courts in this

7    Circuit have applied the conventional standard of good cause.  See Semitool, Inc. v.

8    Tokyo Electron America, Inc., 208 F.R.D. 273, 276 (N.D. Ca. 2002); UMG

9    Recordings, Inc. v. Does, 2006 U.S. Dist. LEXIS 32821, *3 (N.D. Ca. 2006).

10   "Good cause may be found where the need for expedited discovery, in the

11   consideration of the administration of justice, outweighs the prejudice to the

12   responding party."  Semitool, 208 F.R.D. at 276.  Good cause is frequently found in

13   cases involving claims of infringement and unfair competition.  Id.

14         Here, Plaintiffs do not know the identities of those operating the fraudulent

15   Websites as Defendants have gone to great lengths to hide their true identities.

16   Thus, Plaintiffs seek expedited discovery on ServPath, the current host server of the

17   sites, eNom, Inc., the registrar of the domain name, and Google, the company

18   managing the XLH Website operator's email address, in order to uncover the

19   Defendants' true identities.

20         This Court granted expedited discovery under a similar set of facts in UMG

21   Recordings, where the plaintiffs brought an action for copyright infringement

22   against several Doe defendants who were allegedly distributing plaintiff's

23   copyrighted works without authorization.  2006 U.S. Dist. LEXIS 32821 at *2.  The

24   plaintiff in that case sought to serve a Fed. R. Civ. P. 45 subpoena on the Internet

25   Service Provider, seeking immediate discovery of each defendant's true name,

26   address, telephone number, e-mail address and Media Access Control address.  Id.

27   The court determined that the good cause for expedited discovery outweighed any

28   prejudice to the Doe defendants because plaintiff had no other way to obtain such

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
                                                    EXPEDITED DISCOVERY

1    basic information and without the disclosure of the defendants' names and contact

2    information, the litigation could not proceed to the discovery stage. <u>Id.</u> at *3-4.

3    The same reasoning applies in the present case. Plaintiffs cannot pursue this action

4    without first identifying the Doe Defendants. Such good cause outweighs any

5    prejudice to Defendants. Thus, expedited discovery is warranted under the Federal

6    Rules.

7        **B.    Expedited Discovery Is Warranted Under This Court's Local**

8              **Rules**

9       Under this Court's local rules, pre-service discovery is available to discover

10   the identity of Doe defendants who have anonymously or pseudonymously

11   committed tortious acts on-line if the plaintiff is able to: (1) identify the Doe

12   defendant with specificity sufficient to permit the court to determine that the

13   defendant is a real person who can be sued, (2) identify the steps taken to locate the

14   Doe defendant, and (3) establish that its suit against the Doe defendant would

15   withstand a motion to dismiss. Fed. Pre-trial Civ. P. CA 23.159; <u>Gillespie v. Doe</u>,

16   629 F.2d 637, 642-43 (9th Cir. 1980); <u>Columbia Ins. Co. v. Seescandy.com</u>, 185

17   F.R.D. 573, 578-580 (N.D. Ca. 1999).

18       Here, Plaintiffs can satisfy all three requirements. First, Plaintiffs have set

19   out in the facts section above the named operator of the Websites, XL&H, as well

20   as all of the information under which Defendants have registered their sites. This

21   information, combined with evidence of actual confusion documented in the

22   declarations of Peter Mueller, David Plotts and Thomas Dunbar as well as

23   information gathered by Plaintiffs' private investigators, establishes that there are

24   actual individuals behind these sites advertising and purporting to sell tickets to

25   residents of California and across the U.S. who can be sued in the Northern District

26   of California. <u>See</u> <u>Columbia Ins. Co.</u>, 185 F.R.D. at 579 (finding that plaintiff had

27   adequately identified Doe defendant by providing defendant's aliases and

28   producing evidence of emails sent by defendant as well as information

1  demonstrating actual confusion). In addition, Plaintiffs have taken several steps to

2  locate Defendants, however, all contact information provided by Defendants has

3  proved false or a completely futile means of actually communicating with

4  Defendants. For example, Plaintiffs' private investigator has attempted to contact

5  Defendants via email and phone, but Defendants have ignored his messages. In an

6  effort to notify Defendants of this action, Plaintiffs have served these papers via the

7  email address included on Defendants' Websites. Thus, Plaintiffs have made every

8  effort to identify and contact Defendants to no avail. Id. Lastly, as discussed

9  above, Plaintiffs can establish a likelihood of success on all of their causes of action

10  and would withstand a motion to dismiss. Therefore, Plaintiffs are entitled to

11  expedited discovery on ServPath, eNom, Inc. and Google.

12  ## CONCLUSION

13  For all of the foregoing reasons, Plaintiffs respectfully request that the Court

14  grant its motion for a temporary restraining order pending a hearing on their motion

15  for a preliminary injunction and grant the expedited discovery Plaintiffs request.

16

17  Dated: July 22, 2008                O'MELVENY & MYERS LLP

18

19  By: Diana M. Torres
    Attorneys for Plaintiffs

20  The United States Olympic Committee
    and the International Olympic

21  Committee

22

23

24

25

26

27

28

MEMO OF P'S & A'S IN SUPPORT OF TRO AND
EXPEDITED DISCOVERY