1  DALE M. CENDALI (admitted for all purposes 11/30/93)
   DIANA M. TORRES (State Bar No. 162284)
2  O'MELVENY & MYERS LLP
   400 South Hope Street
3  Los Angeles, CA  90071-2899
   Telephone:  (213) 430-6000
4  Facsimile:  (213) 430-6407

5  Attorneys for Plaintiffs
   The United States Olympic Committee and
6  the International Olympic Committee

7

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10

11  The United States Olympic            Case No.  C 08-03514 JSW
    Committee and the International
    Olympic Committee,                   **FIRST AMENDED COMPLAINT**
12

13                     Plaintiffs,

14          v.

15  Xclusive Leisure & Hospitality Ltd.;
    Beijingticketing.com; 2008-
16  0lympics.com;
    Beijingolympic2008tickets.com;
17  Beijingolympictickets2008.com;
    Olympic-tickets.net;
18  Olympicticketsbeijing2008.com;
    Does 1-10, inclusive,

19                     Defendants.

20

21

22

23

24

25

26

27

28

1    Plaintiffs, the United States Olympic Committee ("USOC") and the

2  International Olympic Committee ("IOC"), by their attorneys, O'Melveny & Myers

3  LLP, complain and allege as follows:

4                    **NATURE OF THE ACTION**

5          1.      This is an action concerning Defendants' use of Plaintiffs'

6  valuable intellectual property on seven websites to advertise the sale of tickets to

7  the 2008 Summer Olympic Games in Beijing, China.  On information and belief,

8  the tickets Defendants offer for sale do not exist, will not be delivered, or, in the

9  case of the Opening and Closing Ceremony tickets, cannot be used even if they do

10  exist and are delivered.  These claims arise under the Ted Stevens Olympic and

11  Amateur Sports Act, 36 U.S.C. §220501 *et seq.*; the Lanham Act, 15 U.S.C. §§

12  1051 *et seq.*; and the statutory and common law of the State of California, where

13  plaintiffs are suffering injury and defendants are committing wrongful acts as

14  hereinafter averred.

15                        **THE PARTIES**

16          2.      Plaintiff USOC is a non-profit, federally-chartered corporation

17  with its principal place of business at One Olympic Plaza, Colorado Springs,

18  Colorado 80909-5780.  It is the coordinating body for the Olympic Movement in

19  the United States and is recognized by the IOC as the National Olympic Committee

20  for the United States.  It trains and underwrites expenses for United States athletes

21  at the Olympic and Paralympic Games, as well as determines which United States

22  city may present a bid to host the Olympic and Paralympic Games.  The mission of

23  the USOC is to support United States Olympic and Paralympic athletes in achieving

24  sustained competitive excellence and preserve the Olympic ideals, and thereby

25  inspire all Americans.  In 1950, the USOC was granted a federal charter, now

26  codified as the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §220501

27  *et seq.* ("OASA").

28          3.      Plaintiff IOC is an international, non-governmental, non-profit

1   organization organized and existing under the laws of Switzerland with its principal

2   place of business at Chateau de Vidy, Lausanne, 1007 Switzerland. The IOC was

3   founded on June 23, 1894 by Baron Pierre de Coubertin as the umbrella

4   organization of the Olympic Movement. In 1896, the first Olympic Games of the

5   modern era were hosted in Athens, Greece under the IOC's direction. Since then,

6   the IOC has continued to supervise the organization of the Olympic Games,

7   including 25 Olympic Summer Games and 20 Olympic Winter Games.

8           4.   Upon information and belief, Xclusive Hospitality & Leisure

9   Ltd. is a company located in the United Kingdom, which operates the websites

10   Beijingticketing.com, 2008-0lympics.com, Beijingolympic2008tickets.com,

11   Beijingolympictickets2008.com, Olympic-tickets.net,

12   Olympicticketsbeijing2008.com and www.buy-olympic-tickets.co.uk.

13           5.   Upon information and belief, Defendant

14   www.Beijingticketing.com is a domain name existing on the registry of third party

15   VeriSign, Inc., located in Mountain View, California, and registered to "XLH."

16           6.   Upon information and belief, Defendant www.2008-

17   0lympics.com is a domain name existing on the registry of third party VeriSign,

18   Inc., located in Mountain View, California, and registered to "XLH."[1]

19           7.   Upon information and belief, Defendant

20   www.Beijingolympic2008tickets.com is a domain name existing on the registry of

21   third party VeriSign, Inc., located in Mountain View, California, and registered to

22   "XLH."

23           8.   Upon information and belief, Defendant

24   www.Beijingolympictickets2008.com is a domain name existing on the registry of

25   third party VeriSign, Inc., located in Mountain View, California, and registered to

26   "XLH."

27

28   [1] With respect to Defendant www.2008-0lympics.com, a zero, rather than the letter "O," precedes the letters "lympics."

FIRST AMENDED COMPLAINT

9.      Upon information and belief, Defendant www.Olympic-tickets.net is a domain name existing on the registry of third party VeriSign, Inc., located in Mountain View, California, and registered to "XLH."

10.      Upon information and belief, Defendant www.Olympicticketsbeijing2008.com is a domain name existing on the registry of third party VeriSign, Inc., located in Mountain View, California, and registered to "XLH."

11.      The true names and capacities of the Defendants named herein as Does 1-10, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs will seek leave to amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants is liable to Plaintiffs for the wrongful conduct alleged herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each defendant acting individually, jointly, and severally.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over this action pursuant to Title 28 U.S.C. Sections 1331, 1338(a) and (b), and 1367(a).

13.      This Court has personal jurisdiction over the Defendants pursuant to California's long-arm statute, Cal. Code Civ. Proc. 410.10, because they have sufficient "minimum contacts" with the state of California such that the exercise of personal jurisdiction would comport with the requirements of due process.  Defendants have systematic and ongoing business contacts with companies located in California, including ServePath, an Internet Service Provider located in San Francisco, California, that hosts Defendants' websites, through which they conduct their infringing and unlawful activity.  Defendants have also

committed tortious acts within this judicial district, including by aiming their deceptive conduct at consumers in the State of California, and actually deceiving consumers in the State of California.  Thus, Defendants have purposefully availed themselves of the privileges of conducting their business activities in the State of California such that they should reasonably anticipate being haled into court here.

14.    This Court has *in rem* jurisdiction over Defendant domain names pursuant to the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(2) as (1) Defendants have infringed Plaintiffs' rights in their marks; (2) Plaintiffs are unable to ascertain the identity of the individuals who operate Defendant XLH and who have used the domain names ending in .com and .net; and (3) VeriSign, the domain name registry on which all .com and .net domain names reside, is located in the judicial district where this action is brought.

15.    Venue is proper in this judicial district pursuant to Title 28 U.S.C. Section 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this district.  As discussed below, consumers in this District have placed orders for tickets to events at the upcoming Beijing Games on Defendants' websites, after seeing Plaintiffs' marks and believing the websites to be official sources of Olympic tickets.  Venue is also proper in this judicial district pursuant to Title 28 U.S.C. Section 1391(b)(2) because a substantial part of the property that is the subject of this action is situated in this district, given that the six defendant domain names exist on the VeriSign registry and thus reside in this judicial district and their corresponding six websites are hosted by an Internet Service Provider located in San Francisco.

## THE PLAINTIFFS' VALUABLE RIGHTS

**Background**

16.    The first modern Olympic Games were held in Athens in 1896. The Games have continued since that time.  The 2008 Beijing Olympic Summer Games will begin with Opening Ceremonies on August 8, 2008, will feature

numerous athletic events over a period of sixteen days, and will conclude with Closing Ceremonies on August 24, 2008.

17.     The goal of the modern Olympic Movement is to contribute to building a peaceful and better world by educating youth through sport practiced without discrimination of any kind, in a spirit of friendship, solidarity and fair play. The Olympic Movement encompasses organizations, athletes, and other persons who agree to be guided by the Olympic Charter.  These include the IOC (the Olympic Movement's umbrella organization), the international sports federations (non-governmental organizations responsible for the international administration of one or more sports), the USOC and other National Olympic Committees (organizations that lead the Olympic Movement within each country), the Organizing Committees of the Olympic Games, local clubs, and persons belonging to them, particularly the athletes.

18.     As part of their efforts to further the Olympic Movement, Plaintiffs and the other National Olympic Committees spend significant resources on efforts to promote the upcoming Olympic Games, directly and via their marketing partners.  The USOC and its sponsors have spent nearly $900 million in television advertising during NBC's broadcasts of the last two Olympic Games, and will spend $437 million during the 2008 Olympic Games this summer.  The USOC itself will spend more than $1.5 million in promoting the U.S. Olympic Team prior to and during the 2008 Olympic Games.

**The Olympic Marks**

19.     Since 1896, Plaintiffs have used certain trademarks in connection with the Olympic Games, including the word OLYMPIC and the well-known Olympic Rings symbol.  In addition, Plaintiffs also use specific marks in connection with each Olympic Games.  Those marks include City & Year Marks, such as SYDNEY 2000, ATHENS 2004, TORINO 2006, and BEIJING 2008, and various symbols, logos, taglines, and other marks.

FIRST AMENDED COMPLAINT

20. In the United States, the intellectual property rights to the words and symbols associated with the Olympic Games are statutorily protected by the OASA. *See* 36 U.S.C. §220506(a). The OASA grants to the USOC the "exclusive right to use" various marks associated with the Olympic Games. It further authorizes the USOC to pursue a civil action against any person who uses the protected marks, *inter alia,* "for the purpose of trade" or "to induce the sale of any goods or services." 36 U.S.C. §220506(c).

21. The marks protected by the OASA include the word OLYMPIC, as well as "any trademark, trade name, sign, symbol, or insignia falsely representing association with, or authorization by, the International Olympic Committee, the International Paralympic Committee, the Pan-American Sports Organization, or the [USOC]." 36 U.S.C. §220506(a)(4), (c)(3) and (c)(4).

22. In addition to the USOC's rights under the OASA, Plaintiffs also own statutory and common-law trademark rights to the words, symbols, and other marks they have diligently sought to protect.

23. The USOC owns U.S. Trademark Registration Nos. 968,566, 2,311,493, and 2,777,890 for the word mark OLYMPIC.

24. The IOC registered the word mark BEIJING 2008, as reflected in the U.S. Trademark Registration Nos. 2,739,492 and 2,764,102, and has assigned ownership rights over those registrations to the USOC.

25. The IOC also registered, and assigned to the USOC, U.S. Trademark Registration No. 3,043,229 for the official emblem of the Beijing 2008 Olympic Games, which consists of a stylized human figure design ("Human Figure Logo"), the words "Beijing 2008" written in a unique calligraphy typeface ("Beijing 2008 Word Design"), and the Olympic rings symbol, as depicted below:

FIRST AMENDED COMPLAINT



1
2
3
4
5

6　　26.　The above marks ("Olympic Marks") are extremely valuable

7 assets to Plaintiffs because of the goodwill they represent and because Plaintiffs'

8 revenues are derived principally from licensing their intellectual property through

9 marketing, licensing and sponsorship programs encompassing the use of the

10 Olympic Marks and from the sale of television rights for broadcasting the Olympic

11 Games.  The IOC also receives a portion of the revenue derived from the sale of

12 each ticket to the Beijing Games.

13　　27.　The USOC receives only very limited, specific funding from the

14 United States' government.  The IOC receives no funding from any government,

15 and much of the revenues that it collects are redistributed to National Olympic

16 Committees and international sports federations to train and support their athletes

17 and promote the Olympic Movement.  Thus, the protection of the Olympic Marks is

18 essential to Plaintiffs' continued ability to help promote and coordinate the

19 Olympic Games and thereby further the Olympic Movement.

20 **Authorized Tickets to the Beijing 2008 Olympic Games**

21　　28.　The Beijing Organizing Committee for the Olympic Games

22 ("BOCOG") allots to National Olympic Committees a certain number of tickets to

23 events in the Olympic Games, carefully considering each country's population,

24 proximity to the Games, the number of athletes in each sport, past experience, and

25 numerous other factors.  The USOC and the other National Olympic Committees

26 are responsible for coordinating the sales of tickets in each country, subject to the

27 approval of the IOC and BOCOG.

28　　29.　Tickets to the 2008 Olympic Games in Beijing were first offered

　　　　FIRST AMENDED COMPLAINT

1    for sale in April 2007.  Prices for tickets are intentionally kept low so as to allow as

2    many people as possible to experience the Olympic Games ceremonies and

3    competitions, while still generating revenue sufficient to support the staging of the

4    Games.  Thus, the average price for tickets to sports events in the Beijing Games is

5    just $11.

6    30.    The USOC has an exclusive sponsorship agreement with Global

7    Sports Consultants, L.L.C. d/b/a Jet Set Sports or CoSport that governs the sales of

8    all authorized tickets to the 2008 Beijing Olympic Games in the United States.  Jet

9    Set Sports and CoSport are the only official providers with the right to distribute

10   and sell Olympic tickets and hospitality packages in the United States, and to use

11   Olympic trademarks in the United States to promote and sell such hospitality and

12   travel packages for the 2008 Beijing Olympic Games.

13   31.    All tickets to the Olympic Games are intended to be

14   nontransferable by the purchasing customer.  The terms and conditions printed on

15   the back of each ticket states, "You cannot resell or trade your Ticket."

16   32.    For security reasons, tickets to the Opening and Closing

17   Ceremonies have been specially designed to prohibit, to the greatest extent possible,

18   counterfeiting and speculative ticket reselling.  Specifically, each ticket to the

19   Opening and Closing Ceremonies for the upcoming Games is embedded with a

20   microchip containing the ticket's serial number, which can then be read by a

21   database maintained by BOCOG to retrieve the bearer's photograph, passport

22   details, addresses, e-mail addresses, and telephone numbers.  Tickets to the

23   Opening and Closing Ceremonies may be transferred once, but only if both the

24   original purchaser and the transferee fill out and submit a form requiring specific

25   identifying information to BOCOG by June 30th, 2008.

26   **THE DEFENDANTS' UNLAWFUL CONDUCT**

27   **Defendants' Websites Use the Olympic Marks**

28   33.    Defendants, on information and belief, operate seven websites

(the "Websites") offering for sale what they claim to be tickets to the 2008 Beijing Olympic Games.  One of the Websites, which is located at http://www.beijingticketing.com (the "Primary Website"), is the medium through which users may purchase the tickets, as explained below.  The other six websites operated by Defendants (the "Secondary Websites") do not sell tickets, but they do advertise tickets for sale and contain numerous hyperlinks connecting the user to the Primary Website at the point of purchase.  The Secondary Websites are located at http://www.beijingolympic2008tickets.com, http://www.olympic-tickets.net, http://www.beijingolympictickets2008.com, http://www.2008-0lympics.com;[2] http://www.olympicticketsbeijing2008.com and www.buy-olympic-tickets.co.uk.

34.    The Secondary Websites are all identical in appearance.  The Primary Website looks slightly different than the Secondary Websites, but shares a similar layout and color scheme, uses the same logos and marks, and offers the same tickets for sale.

35.    The Olympic Marks are used on the Websites and in the Websites' domain names without Plaintiffs' consent.  The Websites prominently display in several locations a logo of a stylized human figure that closely resembles Plaintiffs' Human Figure Logo.  Directly below each instance of that logo, the Websites also display the words "Beijing 2008" in a typeface that closely resembles the Beijing 2008 Word Design, as shown below:



This combination of marks is prominently displayed in three places on the Primary Website's home page and two places on the home page of each of the Secondary Websites.

---

[2] As set forth earlier, this domain name uses a zero rather than the letter O.

36.     The Websites also repeatedly use the word marks OLYMPIC and BEIJING 2008 without Plaintiffs' authorization.

37.     Each of the Secondary Websites uses the mark OLYMPIC in its domain name; one of those Websites also uses the BEIJING 2008 mark without Plaintiffs' authorization.

38.     The sole purpose of the Websites is to sell tickets to the Olympic Games.  The Websites offer no other good or service.  Thus, every instance of the Websites' use of the Olympic Marks appears in the context of an offer to sell tickets.

**Defendants Are Offering To Sell Tickets They Cannot Transfer And Likely Do Not Possess**

39.     The home page of each Website contains links to subpages for 39 categories of Olympic events, including the Opening and Closing Ceremonies and 37 categories of individual athletic competitions.  Each subpage offers a variety of tickets within each category, including tickets to each day of the competition and frequently including several pricing options depending on where the seats are located at the event.  The tickets offered for sale on the Websites range in price, from as low as $100 for early individual competitions, to as high as $2150 per ticket for the Opening Ceremonies.  When a user clicks on the links provided to purchase the tickets, the user is redirected to a subpage of the Primary Website to select and purchase tickets.

40.     Plaintiffs are informed and believe, and based thereon allege, that tickets offered for sale on the Websites, and purchased from the Primary Website, are largely, if not entirely, nonexistent.

41.     Numerous consumers, including residents of California, have placed orders to purchase tickets through the Primary Website, believing it to be an official site because of the site's use of Olympic logos and marks.  These consumers, however, including residents of the State of California, have not

FIRST AMENDED COMPLAINT

1    received the tickets that they ordered.  Several of these consumers became

2    suspicious of the validity of Defendants' tickets.  One such consumer attempted to

3    cancel his purchase.  He exchanged various emails with Defendants regarding his

4    concerns and questioning information on the Websites that he learned was

5    inaccurate.  Defendants responded, "Instead of asking questions and going around

6    the houses and spending silly amounts of time in emailing us and trying to catch out

7    after booking, why don't you just ask for your money back and for us to cancel

8    your order instead of trying to make yourself a private detective and wasting your

9    time and ours."  The consumer then sought to cancel his order and followed up four

10   times, but Defendants simply ignored his requests.  The Website did not ask for,

11   and this consumer did not provide, his photograph, passport details, addresses, e-

12   mail addresses, and telephone numbers, all of which are required by BOCOG for

13   admission, even with a valid ticket, to the Opening Ceremonies.  Accordingly, this

14   consumer cannot receive from Defendants a ticket that will gain him admission to

15   the Opening Ceremonies.

16          42.    Another customer that purchased tickets to the Opening

17   Ceremony became similarly suspicious that Defendants would be unable to provide

18   legitimate tickets, given the identification and photograph requirements for

19   Opening Ceremony tickets.  He also sent a series of emails to Defendants regarding

20   his concerns and attempted to contact them by phone, and received no response.

21          43.    Yet another customer, also suspicious that the Opening

22   Ceremony tickets he had purchased from Defendants were fraudulent, received an

23   email from Defendants claiming that "As our tickets come directly from the

24   sponsors no name id or photo pictures are required on the ticket."  He then

25   contacted CoSport, which informed him that Defendants' claim was incorrect and

26   that *all* tickets to the Opening Ceremony are embedded with a microchip linked to a

27   photograph and passport information.  Not surprisingly, Defendants ignored that

28   customer's subsequent efforts to contact them.

FIRST AMENDED COMPLAINT

44.     On information and belief, other consumers have complained about tickets sold on other websites operated by these same Defendants (also using the name XLH).  Among the complainants cited in one news article were fans escorted from their seats by security guards when it was discovered that the tickets they had purchased from Defendants to another type of event had been stolen, and another purchaser who received no tickets at all, only an empty envelope.

45.     A private investigator employed by Plaintiffs visited the Primary Website.  He purchased one ticket to the Opening Ceremony and one ticket to the event "Kayak Flatwater," spending a total of $1905.  His credit card has been charged for the tickets he ostensibly purchased, but he has not received them.

46.     After completing the transaction, he attempted to contact the Websites' operator using the email address provided on the Primary Website to inquire as to the status of his order and whether the Website needed more information from him.  When he received no response to his inquiries, he attempted to call Defendants several times to request that his order be expedited as provided for on the Website, but without success.  Each time he called, he either received looping tape (a menu with choices that repeat over and over, regardless of which option you select), or the phone rang repeatedly for several minutes and then ultimately disconnected.  He made yet another inquiry by email and, this time, was told that the Website was "busy" and that his expedited ticket order would not be shipped until July 25, 2008.

47.     The Website did not ask for, and the investigator did not provide, his photograph, or passport details, required by BOCOG's policy for admission, even with a valid ticket, to the Opening Ceremony.  Accordingly, this investigator cannot receive from Defendants a ticket that will gain him admission to the Opening Ceremony.  The consumers referenced above who placed orders for Opening and Closing Ceremony tickets through Defendants websites were similarly not asked for their photographs or their passport information and thus cannot

FIRST AMENDED COMPLAINT

receive from Defendants tickets that will gain them admission to the Opening or Closing Ceremonies under BOCOG'S policy.

**Plaintiffs Will Suffer Irreparable Harm From Defendants' Continuing Conduct**

48.    Plaintiffs are filing this action to stop Defendants' misappropriation of their valuable intellectual property to deceive innocent customers.  Not only will such customers be harmed by Defendants' conduct, but Plaintiffs will also be harmed in numerous ways.

49.    First, Defendants' conduct threatens the Olympic brand that Plaintiffs have worked so hard to build and protect.  If the Olympic Marks are permitted to be used in connection with fraudulent criminal activity, they will be tarnished in the public eye.  Individual customers who purchase tickets from Defendants and do not receive them will likely be soured on their experience attempting to go to the Olympic Games, and may not attend future Games or purchase licensed merchandise, when, instead, they could have purchased from authorized channels.  Indeed, customers who are defrauded by a site that uses the Olympic Marks will likely be wary in the future of trusting even authorized sites and vendors using the Olympic Marks, because they will have no assurance that the use of the Olympic Marks does, in fact, denote an authorized agent of the USOC.  Given Plaintiffs' dependence on the value of their intellectual property to fund their mission, it is imperative that the Olympic brand be protected from the Defendants' efforts to undermine that brand for their own economic gain to the detriment of the Olympic Movement.

50.    Defendants also injure Plaintiffs' relationships with their sponsors.  The USOC's exclusive partner for ticket sales, Jet Set Sports, suffers directly by having to compete with unauthorized ticket sellers.  Both the USOC and the IOC have numerous other sponsors in the United States who have paid substantial sums to be associated with the Olympic brand, the value of which is

FIRST AMENDED COMPLAINT

1   being threatened by Defendants' activity.  Defendants' conduct, if allowed to

2   continue, will likely adversely affect Plaintiffs' ability to attract such sponsors and

3   sponsorship revenues in the future.

4          51.    Finally, the unauthorized sales of tickets (whether nonexistent or

5   not) will affect authorized ticket sales by Jet Set Sports.  Even as of this late date,

6   there are tickets available for purchase in the United States as part of hospitality

7   packages.  Consumers who purchase (or believe they have purchased) tickets from

8   Defendants are less likely to purchase such packages, and the USOC, which

9   receives certain revenue from Jet Set Sports based on ticket sales, suffers directly as

10  a result of Defendants' conduct.

11  **Defendants' Efforts to Conceal Their Identities**

12         52.    Defendants are misleading the public as to their true identities

13  and contact information, in an apparent effort to remain anonymous and evade

14  prosecution for their illicit conduct.

15         53.    Each of the Websites lists XLH or X.L. & H. Ltd., which, upon

16  information and belief, stand for Xclusive Leisure & Hospitality, as the owner of

17  the site and further states that XLH is a Delaware corporation, with an address at

18  2415 Camelback Road, Suite 700, Phoenix, Arizona, and a phone number that

19  begins with +44, the code for London, UK.  Despite this contention, XLH is not a

20  corporation organized in Delaware or Arizona, nor does it have a physical address

21  at 2415 Camelback Road, Suite 700, Phoenix, Arizona.  In fact, that address is the

22  address for a law firm.

23         54.    Despite Defendants' efforts to conceal their identities, Plaintiffs

24  have learned the identity of XLH.  Plaintiffs also have sufficient information to

25  confirm that all of the Defendants have defrauded, and will continue to defraud,

26  consumers in California and throughout the United States.  Six of the seven

27  Websites are registered with domain names ending in .com or .net, which are top-

28  level domains commonly used in the United States.  Prices for tickets offered on the

FIRST AMENDED COMPLAINT

Websites are all expressly stated in U.S. dollars.  And, as explained above, they have multiple contacts with corporations within the state of California, and have completed confirmed sales of tickets they have not delivered, and cannot deliver, to consumers in the state of California.

## FIRST CLAIM FOR RELIEF

### Unauthorized Use of the Olympic Marks
### In Violation of 36 U.S.C. § 220506(a) and (c)

55.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 54.

56.     Defendants use the Olympic Marks including by using the word OLYMPIC and logos and other marks that falsely represent association with or authorization by Plaintiffs on the Websites and by using various combinations of the word marks OLYMPIC and BEIJING 2008 in the Websites' domain names.

57.     Plaintiffs have not consented to Defendants' use of the Olympic Marks.

58.     Defendants use the Olympic Marks for the purpose of trade and to induce the sale of goods.

59.     Plaintiffs are entitled, pursuant to §220506(c) of the OASA, for all of the remedies available under the Lanham Act, which include treble damages, costs, and attorneys' fees.

60.     Plaintiffs have no adequate remedy at law.  The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill.  Accordingly, Plaintiffs are entitled to injunctive relief, and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651.

FIRST AMENDED COMPLAINT

## SECOND CLAIM FOR RELIEF

**Infringement of Registered Trademarks
In Violation of Section 32(1) of the Lanham Act,
37 U.S.C. §1114(1)**

61.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 60.

62.    Plaintiffs' federal trademark registrations for the Human Figure Logo, the Beijing 2008 Word Design, and the word marks OLYMPIC and BEIJING 2008 are in full force and effect.

63.    The display of logos, symbols, words, and other marks on the Websites and in the Websites' domain names, as alleged herein, constitutes the use in interstate commerce, without Plaintiffs' consent, of reproductions, counterfeits, copies, and colorable imitations of Plaintiffs' registered marks in connection with the sale, offering for sale, distribution, and advertising of goods.

64.    Such use is likely to cause confusion, to cause mistake, or to deceive consumers regarding the source of Defendants' goods, as they are likely to lead the public to conclude incorrectly that Defendants' tickets originated with, or are sponsored or authorized by Plaintiffs, to the damage and harm of Plaintiffs and the public.

65.    Defendants have acted willfully, with the intent to trade upon the goodwill and reputation of Plaintiffs, and with the intent to cause confusion, cause mistake, and to deceive.

66.    Plaintiffs are entitled to all of the remedies available under the Lanham Act, including treble damages, costs, and attorneys' fees.

67.    Plaintiffs have no adequate remedy at law.  The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill.  Accordingly, Plaintiffs are entitled to injunctive relief,

FIRST AMENDED COMPLAINT

and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651.

### THIRD CLAIM FOR RELIEF

**False Endorsement or Association and False Designation of Origin
In Violation of Section 43(a) of the Lanham Act,
37 U.S.C. §1125(a)**

68.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 67.

69.    By using them on the Websites and in the Websites' domain names, as alleged herein, Defendants use in commerce logos, symbols, words, and other marks that falsely designate the origin of their goods and use false or misleading descriptions of facts and false or misleading representations of facts, which are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods and commercial activities by Plaintiffs.

70.    Defendants' activities are likely to lead the public to conclude incorrectly that Defendants are endorsed by or associated with Plaintiffs, or that Defendants' tickets originated with, or are sponsored or authorized by, Plaintiffs, to the damage and harm of Plaintiffs and the public.

71.    Defendants have acted willfully, with the intent to trade upon the goodwill and reputation of Plaintiffs, and with the intent to cause confusion, to cause mistake, and to deceive.

72.    Plaintiffs are entitled to all of the remedies available under the Lanham Act, including treble damages, costs, and attorneys' fees.

73.    Plaintiffs have no adequate remedy at law.  The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill.  Accordingly, Plaintiffs are entitled to injunctive relief,

FIRST AMENDED COMPLAINT

1    and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a)

2    and 1116(d)(1)(A) and 28 U.S.C. § 1651.

3

## FOURTH CLAIM FOR RELIEF

4

### False Advertising
### In Violation of Section 43(a) of the Lanham Act,
### 37 U.S.C. §1125(a)

5

6        74.    Plaintiffs repeat and reallege each and every allegation set forth

7    in paragraphs 1 through 73.

8        75.    The Websites use in commerce logos, symbols, words, and other

9    marks that falsely designate the origin of Defendants' goods and use false or

10   misleading descriptions of facts and false or misleading representations of facts,

11   which, in commercial advertising or promotion, misrepresent the nature,

12   characteristics, and qualities of Defendants' goods.

13       76.    Defendants' conduct has harmed Plaintiffs' ability to conduct

14   their business.  In addition to harming the market for Olympic tickets through

15   legitimate channels of trade, Defendants' conduct is also likely to damage the

16   Olympic experience for consumers who purchased nonexistent tickets, many of

17   whom may expend significant sums to travel to Beijing and then discover that they

18   will be unable to attend the Games.  Such consumers may be less likely to purchase

19   other Olympic-related merchandise and less likely to purchase tickets to future

20   Olympic Games.  Thus, the competitive injury suffered by Plaintiffs will go far

21   beyond tickets sales for the upcoming Olympic Games in Beijing.

22       77.    Defendants have acted willfully, with the intent to deceive the

23   public regarding the nature, characteristics, and qualities of the tickets they offer for

24   sale.

25       78.    Plaintiffs are entitled to all of the remedies available under the

26   Lanham Act, including treble damages, costs, and attorneys' fees.

27       79.    Plaintiffs have no adequate remedy at law.  The conduct of

28

FIRST AMENDED COMPLAINT

Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill. Accordingly, Plaintiffs are entitled to injunctive relief, and Defendants' domain names should be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651.

### FIFTH CLAIM FOR RELIEF

**Cybersquatting**
**In Violation of Section 43(d) of the Lanham Act,**
**37 U.S.C. §1125(d)**

80.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 79.

81.     Defendants have registered and used Defendant domain names, which incorporate words and phrases that are both (1) protected by reason of 36 U.S.C. § 220506 and (2) identical, confusingly similar to, and dilutive of Plaintiffs' registered trademarks.

82.     Defendants have a bad faith intent to profit from their use of the Olympic Marks, which they have used primarily with the intent to divert consumers from legitimate online locations for sales of authorized Olympic tickets to their own sites accessible under the Defendants' domain names that could harm the business and goodwill represented by the marks for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Defendants' web sites.

83.     Defendants have provided false and misleading contact information when applying for the registration of the domain names, have intentionally failed to maintain accurate contact information, and have demonstrated a pattern of such conduct.

84.     Defendants have registered or acquired multiple domain names which Defendants know are identical to, confusingly similar to and/or dilutive of Plaintiffs' marks.

FIRST AMENDED COMPLAINT

85.     Defendants have extensively incorporated Plaintiffs' marks into their respective domain names.

86.     Defendants are entitled to an order that Defendants' domain names be forfeited, cancelled, or transferred to Plaintiffs pursuant to 37 U.S.C. §1125(d)(1)(C).

## SIXTH CLAIM FOR RELIEF

**Trademark Infringement and Unfair Competition
In Violation of California Common Law and
California Business & Professions Code §§ 17200 *et seq*.**

87.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 86.

88.     This claim arises under California Business & Professions Code §§ 17200 *et seq*. and the common law of this state relating to trademark infringement, unfair competition, and palming off.  This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition joined with a substantial and related claim under the Trademark Laws of the United States, and under the principles of supplemental jurisdiction as set forth at 2 U.S.C. § 1367.

89.     Plaintiffs own all rights, title, and interest in and to the distinctive Olympic trademarks, by virtue of their good-faith, extensive use and in commerce and licensing of those marks.

90.     Defendant's Websites incorporate matter that constitute replicas and imitations of Plaintiffs' marks.  Such unauthorized use by Defendants of Plaintiffs' marks constitutes trademark infringement and unfair competition and is hence unlawful.  Defendants' conduct is also fraudulent in that Defendants are using Plaintiffs' marks to falsely represent that they are authorized by or associated with Plaintiffs and are selling legitimate tickets to Olympic events when, in fact, they are not.  Such conduct is also inherently unfair and is likely to cause confusion and mistake in the minds of the purchasing public as to Defendants' association or

FIRST AMENDED COMPLAINT

affiliation with Plaintiffs and the source of the tickets sold by Defendants, as they are likely to lead the public to conclude incorrectly that Defendants' tickets originated with, or are sponsored or authorized by Plaintiffs, to the damage and harm of Plaintiffs and the public.

91.    Defendants' acts entitle Plaintiffs to general and special damages under California common law for all of Defendants' profits derived from their unlawful conduct to the full extent provided for by the common law of the State of California.  Defendants' acts also entitle Plaintiffs to restitution and attorneys' fees under California Business and Professions Code § 17200.

92.    Plaintiffs have no adequate remedy at law.  The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill.  Accordingly, Plaintiffs are entitled to injunctive relief.

## SEVENTH CLAIM FOR RELIEF

**False Advertising**
**In Violation of California Statutory Law,**
**California Business & Professions Code §§ 17500 *et seq*.**

93.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 92.

94.    Defendants' activities constitute wrongful dissemination before the public of the State of California of untrue and misleading statements.

95.    Upon information and belief, such statements were known, or with the exercise of reasonable care, should have been known, by Defendants to be untrue and misleading, and were made with the intent to induce customers to purchase the products of Defendants.

96.    Defendants have acted willfully, with the intent to engage in unfair competition with Plaintiffs, and as such Defendants' conduct is malicious and oppressive.

97.    Defendants' conduct has harmed Plaintiffs' ability to compete

with Defendants.  In addition to harming the market for Olympic tickets through legitimate channels of trade, Defendants' conduct is also likely to damage the Olympic experience for consumers who purchased nonexistent tickets, many of whom may expend significant sums to travel to Beijing and then discover that they will be unable to attend the Games.  Such consumers may be less likely to purchase other Olympic-related merchandise and less likely to purchase tickets to future Olympic Games.  Thus, the competitive injury suffered by Plaintiffs will go far beyond tickets sales for the upcoming Olympic Games in Beijing.

98.    Defendants' acts entitle Plaintiffs to restitution under California Business and Professions Code § 17535.

99.    Plaintiffs have no adequate remedy at law.  The conduct of Defendants have caused and, if not enjoined, will continue to cause irreparable harm and damage to Plaintiffs' rights in their trademarks and to Plaintiffs' business, reputation and goodwill.  Accordingly, Plaintiffs are entitled to injunctive relief under California Business and Professions Code § 17535.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

100.    That Defendants, their agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participating with any of them be immediately and permanently enjoined, pursuant to 15 U.S.C. § 1116(a), from:

a.    displaying the Olympic Marks, or any terms, logos or images that are confusingly similar thereto, on the Websites or any other website;

b.    directly or indirectly infringing the Olympic Marks in any manner including, but not limited to, advertising, selling, and/or offering for sale any tickets or any other goods or services, that infringe said trademarks;

- 23 -                          FIRST AMENDED COMPLAINT

c.    engaging in any conduct that tends falsely to represent, or is likely to confuse, mislead, or deceive members of the public into believing, that the actions of Defendants, the tickets sold by Defendants, or Defendants themselves are connected with Plaintiffs, are sponsored, approved, or licensed by Plaintiffs, or are in some way connected or affiliated with Plaintiffs;

d.    affixing, applying, annexing, or using in connection with tickets or any other goods or services, a false description or representation, including words or other symbols, tending falsely to describe or represent such goods or services as being those of Plaintiffs;

e.    otherwise competing unfairly with Plaintiffs in any manner;

f.    registering and maintaining any domain name which bears, incorporates or utilizes on any level the Olympic Marks or any terms which are confusingly similar thereto;

g.    effecting assignments or transfers, forming new entities or associations or utilizing any other means or device for the purpose of circumventing or otherwise avoiding prohibitions set forth in subparagraphs (a) through (f);

101.   That Defendants' domain names be impounded under 15 U.S.C. §§ 1116(a) and 1116(d)(1)(A) and 28 U.S.C. § 1651 or, in the alternative, that Defendants be required to forfeit, cancel, or transfer to Plaintiffs any domain name which incorporates any of the Olympic Marks pursuant to 15 U.S.C. §1125(d)(1)(C).

102.   That Defendants account for and pay over to Plaintiffs all damages sustained by Plaintiffs from lost sales of genuine Olympic tickets and other Olympic-related merchandise, and profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, trebled, to the full extent provided under

FIRST AMENDED COMPLAINT

1   Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the

2   alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C.

3   § 1117(c).

4        103.   That Defendants account for and pay over to Plaintiffs, in

5   accordance with California law, all damages sustained by Plaintiffs and profits

6   realized by Defendants by reason of Defendants' unlawful acts herein alleged and

7   prejudgment interest and that those profits be increased as provided by law;

8        104.   That Plaintiffs recover from Defendants their reasonable

9   attorneys' fees and costs of suit under 15 U.S.C. § 1117;

10       105.   That Defendants, within ten days after the service of the

11  judgment herein, be required to file with this Court and serve upon Plaintiffs'

12  attorneys, a written report under oath setting forth in detail the manner in which

13  they have complied with the judgment; and

14       106.   That Plaintiffs have all other and further relief as the Court may

15  deem just and proper under the circumstances.

16

17       Dated:  July 29, 2008

18                          O'MELVENY & MYERS LLP

19

20                          By:  /s/ Diana M. Torres
                                 Diana M. Torres
21
                            Attorneys for Plaintiffs
22                          The United States Olympic Committee and
                            the International Olympic Committee
23

24

25

26

27

28

FIRST AMENDED COMPLAINT