1 DALE M. CENDALI (admitted for all
 purposes 11/30/93)
2 DIANA M. TORRES (SBN 162284)
 O'MELVENY & MYERS LLP
3 400 South Hope Street
 Los Angeles, CA 90071-2899
4 Telephone: (213) 430-6000
 Facsimile: (213) 430-6407
5 dtorres@omm.com

6 DAVID S. ALMELING (State Bar No. 235449)
 O'Melveny & Myers LLP
7 Embarcadero Center West
 275 Battery Street, Suite 2600
8 San Francisco, CA 94111-3305
 cmeninsky@omm.com
9
 Attorneys for Plaintiffs
10 The United States Olympic Committee and
 the International Olympic Committee
11

12 **UNITED STATES DISTRICT COURT**

13 **NORTHERN DISTRICT OF CALIFORNIA**

14

15 United States Olympic Committee
 and the International Olympic         Case No. C 08-03514 JSW
16 Committee,
                                       **AMERNDED [~~PROPOSED~~] FINDINGS**
                                       **OF FACT AND CONCLUSIONS OF**
17                Plaintiffs,          **LAW AND AMENDED [PROPOSED]**
                                       **ORDER GRANTING PRELIMINARY**
18        v.                           **INJUNCTION**

19 Xclusive Leisure & Hospitality Ltd.;   Date: August 22, 2008
 Beijingticketing.com; 2008-            Time: 9:00 a.m.
20 0lympics.com;                         Judge: Hon. Jeffrey S. White
 Beijingolympic2008tickets.com;
21 Beijingolympictickets2008.com;
 Olympic-tickets.net;
22 Olympicticketsbeijing2008.com;
 Does 1-10, inclusive,
23
                Defendants.
24

25

26

27

28

1    This case having come before the Court on August 22, 2008, and the Court

2    having heard the evidence and considered the arguments of counsel does hereby

3    make, pursuant to Fed. R. Civ. P. 52 and Fed. R. Civ. P. 65(d), the following

4    Findings of Fact and Conclusions of Law:

5    **I.    FINDINGS OF FACT**

6         **A.    The Plaintiffs' Rights**

7         1.    The USOC is the National Olympic Committee for the United States;

8    as such, it coordinates the Olympic Movement in the United States, trains and

9    underwrites expenses for United States athletes at the Olympic Games and

10   Paralympic Games, and determines which United States city may present a bid to

11   host the Olympic and Paralympic Games.  (Burton ¶ 5.)[1]

12        2.    The IOC is an international, non-governmental, non-profit

13   organization and is the umbrella organization of the Olympic Movement.  (Stupp ¶

14   3.)  Since 1896, when the first modern games were held in Athens, Greece, the IOC

15   has supervised the organization of the Olympic Games.  (*Id.* ¶¶ 3-4.)

16        3.    Since 1896, Plaintiffs and their predecessors have used certain words

17   and symbols in connection with the Olympic Games, including the word

18   OLYMPIC and the Olympic Rings symbol, which is the most recognized sports

19   emblem in the United States.  USOC research shows that more than 86% of the

20   U.S. population can identify the Olympic Rings as the symbol for the Olympic

21   Games.  (Burton ¶ 8; Stupp ¶ 7.)

22        4.    In addition, Plaintiffs also use specific marks in connection with each

23   Olympic Games, including City & Year Marks, such as SYDNEY 2000, ATHENS

24

25

26   [1] As used herein, "Burton" refers to the declaration of Richard Burton filed July 22, 2008;
     "Lintumaa" refers to the declaration of Kai Lintumaa filed July 21, 2008; "Pei" refers to the

27   declaration of Lan Pei filed July 29, 2008; "Long" refers to the declaration of Fei Long filed July
     22, 2008; "Schneider" refers to the declaration of Courtney Schneider filed July 22, 2008;

28   "Meninsky" refers to the declaration of Carla Meninsky filed August 11, 2008; and "Stupp" refers
     to the declaration of Howard Stupp filed July 22, 2008.

2004, TORINO 2006, and BEIJING 2008, and various symbols, logos, taglines, and other marks.  (Burton ¶ 8; Stupp ¶ 7.)

5.  The USOC also owns U.S. Trademark Registration Nos. 968,566, 2,311,493, and 2,777,890 for the word mark OLYMPIC; Registration Nos. 2,739,492 and 2,764,102 for the word mark BEIJING 2008; and Registration No. 3,043,229 for the official emblem of the Beijing 2008 Olympic Games. (Burton ¶ 9; Stupp ¶ 8.)  Collectively, Plaintiffs own dozens of U.S. trademark registrations that incorporate the Olympic Rings symbol.

6.  The above marks (the "Olympic Marks") are valuable assets to Plaintiffs.  First, they represent the tremendous goodwill Plaintiffs have earned over the years.  Second, Plaintiffs' revenue comes primarily from the sale of rights to broadcast the Olympic Games and from the marketing, licensing, and sponsorship programs that involve the use of their marks.  (Burton ¶ 10; Stupp ¶¶ 9-10.)  Thus, the protection of the Olympic Marks under the OASA, the Lanham Act, and common law is essential to Plaintiffs' continued ability to help promote and coordinate the Olympic Games.  (Burton ¶ 10; Stupp ¶ 10.)

**B.  Authorized Tickets to the Beijing 2008 Olympic Games**

7.  The 2008 Beijing Olympic Games began with the Opening Ceremony on August 8, 2008, and will conclude with the Closing Ceremony on August 24, 2008.  (Burton ¶ 3; Stupp ¶ 4.)

8.  The IOC and the Beijing Organizing Committee for the Olympic Games ("BOCOG") have delegated to the USOC the responsibility for coordinating all sales of tickets in the United States for the upcoming 2008 Beijing Olympic Games.  (Burton ¶ 11; Stupp ¶ 11.)

9.  The USOC has an exclusive sponsorship agreement with Global Sports Consultants, L/L/C/ d/b/a Jet Set Sports or CoSport that governs the sales of all authorized tickets to the 2008 Beijing Olympic Games in the United States. (Burton ¶ 12.)  Jet Set Sports and CoSport are the only official providers with the

1   right to distribute and sell Olympic tickets and hospitality packages in the

2   United States, and use Olympic trademarks in the United States to promote and sell

3   hospitality packages and tickets for the Beijing Olympic Games.  (*Id.*)

4          10.     In the interests of security, and in an effort to prevent counterfeiting,

5   each ticket to the Opening and Closing Ceremonies is embedded with a microchip

6   containing the ticket's serial number, which corresponds to information in a data

7   base maintained by BOCOG that contains the bearer's photograph, passport details,

8   addresses, e-mail addresses, and telephone numbers.  (Stupp ¶ 14.)

9          11.     These tickets may be transferred only once and only through a

10  complex procedure requiring both the original ticket purchaser and the transferee to

11  submit forms to BOCOG.  (*Id.*)

12         12.     This is to maximize the security of the Games and eliminate mass-

13  scale speculative ticket reselling.  This is important, as ticket prices for the Beijing

14  Olympic Games were intentionally set very low so as to allow as many people as

15  possible to experience the Olympic Games ceremonies and competitions.  (Stupp ¶

16  12.)

17         **C.    The Defendants' Conduct**

18         13.     Until this Court issued a temporary restraining order, Defendants

19  operated seven websites (the "Websites") offering for sale what they claimed to be

20  tickets to the 2008 Beijing Olympic Games.  One of the Websites, located at

21  http://www.beijingticketing.com/ (the "Primary Website"), was the medium

22  through which users could buy the tickets.  The other websites operated by

23  Defendants (the "Secondary Websites"), located at www.olympic-tickets.net,

24  www.beijingticketing.com, www.beijingolympic2008tickets.com,

25  www.beijingolympictickets2008.com, www.olympicticketsbeijing2008.com,

26  www.2008-0lympics.com; and www.buy-olympic-tickets.co.uk, offered the same

27  tickets for sale but contained hyperlinks connecting the user to the Primary Website

28  at the point of purchase.  (Lintumaa Ex. A.)

14. The Olympic Marks were used on the Websites and in the Secondary Websites' domain names without Plaintiffs' consent. The websites also repeatedly used the word marks OLYMPIC and BEIJING 2008 without Plaintiffs' authorization. (Lintumaa Exs. A, D.)

15. The Websites prominently displayed in several locations a human figure logo that closely resembles the Beijing 2008 Human Figure Logo. Directly below each instance of the logo also display the words "BEIJING 2008" in a typeface that closely resembles the Beijing 2008 Word Design. (Lintumaa Exs. A, D.)

16. The Websites' use of the Olympic Marks misled the public into believing that Defendants were operating an official Olympic ticket site. (*See* Pei ¶ 2; Long ¶ 3.) Even a *Forbes Traveler* writer appeared to have been confused, as the magazine reported in February, 2008 that:

> The safest bet is to go through the official ticketing websites, including **www.beijingticketing.com**, www.chinaolympic2008tickets.com, and www.beijing-2008tickets.com, www.cosport.com, or en.beijing2008.cn.

(Schneider Ex. A (emphasis added).)

17. The sole purpose of the Primary Website was to sell tickets to the Olympic Games. The Primary Website offered no other good or service. Thus, every instance of the Websites' use of the Olympic Marks appeared in the context of an offer to sell tickets. (Lintumaa Ex. A.)

**D. Defendants' Ticket Offers**

18. The Primary Website offered for sale tickets in 39 categories of Olympic events, including the Opening and Closing Ceremonies and 37 categories of individual athletic competitions. (Lintumaa Ex. A.)

19. The tickets offered for sale ranged in price, from as low as $100 for early individual competitions, to as high as $2150 per ticket for the Opening Ceremonies. (Lintumaa ¶ 3.) When a user clicked on the links provided to select

1   and purchase tickets, the user was redirected to a subpage of the Primary Website to

2   select and purchase tickets.  (*See id*. ¶¶ 2-3, 12-13.)

3       20.   Many consumers have complained about having been deceived by the

4   Websites.  Each had purchased tickets to one or more events through the Websites

5   but had not actually received any tickets.  (*See, e.g.,* Pei ¶¶ 2-5; Long ¶¶ 2-8.)

6       21.   A private investigator employed by Plaintiffs visited the Primary

7   Website, ordered one ticket to the Opening Ceremony and another to a kayaking

8   event, totaling $1,905.  Defendants did not ask the investigator for his photograph

9   or passport details, as required by BOCOG's policy for admission (even with a

10  valid ticket) to the Opening Ceremony, and neither provided such information.

11  (Lintumaa ¶¶ 2-4.)

12      22.   Accordingly, Defendants could not provide a would-be purchaser with

13  tickets that would gain them admission to the Opening Ceremony under BOCOG's

14  policy.

15      23.   In fact, Defendants did not provide the promised tickets.  On August 3,

16  2008, Defendants sent purchasers an email confirming that no tickets would be

17  delivered, ostensibly because Defendants' "supplier" had failed to supply

18  Defendants with tickets.  Rather than agree to refund the purchasers' money,

19  Defendants suggested that the purchasers seek recompense from  their credit card

20  companies.  (Meninsky Ex. A.)

21      24.   Consumers who sought to purchase tickets from Defendants are less

22  likely to purchase tickets or hospitality packages, and the USOC, which receives

23  some incremental revenue from Jet Set Sports based on ticket sales, suffers directly

24  as a result of Defendants' conduct.  (Burton ¶¶ 16; Stupp ¶ 9.)  More importantly,

25  consumers who are defrauded by Defendants will likely be soured on their

26  experience attempting to go to the Olympic Games, and thus their view of the

27  Olympic organizations will be tarnished.  (Burton ¶ 14; Stupp ¶ 16.)

28

1

**E.    Defendants' Efforts to Conceal Their Identities**

2      25.    Defendants are concealing from the public their true identities and

3  contact information.

4      26.    Each of the Websites lists XLH or X.L.& H. Ltd as the owner of the

5  site with phone numbers in London, UK and offices in Phoenix, Arizona, but the

6  address is false and none of the phone numbers leads to an operating telephone line.

7  The websites further state that XLH is a Delaware Corporation, but XLH is not a

8  corporation organized in Delaware or Arizona.  (Lintumaa ¶¶ 7-8.)

9      27.    Plaintiffs have notified Defendants of this action, this Court's

10  temporary restraining order, and Plaintiffs' motion for preliminary injunction.  (*See*

11  Docket Nos. 16, 27, 30, 37, 41, 45, 52, 58, 60.)

12      28.    If any of the foregoing findings of fact are deemed to be conclusions of

13  law, they shall be incorporated herein as conclusions of law reached by this Court

14  as though fully set forth as such.

15      **II.    CONCLUSIONS OF LAW**

16      29.    In the United States, the intellectual property rights to the words and

17  symbols associated with the Olympic Games are statutorily protected not only by

18  the Lanham Act, 15 U.S.C. § 1114, *et seq.*, but by the Olympic and Amateur Sports

19  Act (the "OASA") as well.  *See* 36 U.S.C. § 220506(a).  The OASA grants to the

20  USOC the "exclusive right to use" various marks associated with the Olympic

21  Games in the United States.  It further authorizes the USOC to pursue a civil action

22  against any person who uses the protected marks "for the purpose of trade, to

23  induce the sale of any goods or services, or to promote any theatrical exhibition,

24  athletic performance, or competition."  36 U.S.C. § 220506(c).

25      30.    The marks protected by the OASA include the word OLYMPIC, as

26  well as "any trademark, trade name, sign, symbol, or insignia falsely representing

27  association with, or authorization by, the International Olympic Committee, the

28

International Paralympic Committee, the Pan-American Sports Organization, or the [USOC]." 36 U.S.C. § 220506(a)(4), (c)(3) and (c)(4).

31.     In order to obtain a preliminary injunction in the Ninth Circuit, the moving party must show either "(1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841-840 (9th Cir. Cal. 2001). These standards "are not separate tests but the outer reaches of a single continuum." *Id.*

**A.     Likelihood of Success on the Merits**

      **1.     Unauthorized Use of the Olympic Marks in Violation of the Olympic and Amateur Sports Act**

32.     Through the OASA, Congress has granted the USOC the exclusive right to use and control the commercial use of certain Olympic symbols. 36 U.S.C. § 220506; *see U.S.O.C. v. Intelicense Corp.*, 737 F.2d 263, 266-67 (2d Cir. 1984) (Congress intended to promote U.S. Olympic effort by providing USOC with "unfettered control over the commercial use of Olympic-related designations" and finding violation of the Act where defendant made commercial use of Olympic symbol without consent).

33.     Under the statute, any person who uses any of the Olympic symbols without the USOC's consent "for purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition" is liable for damages in accordance with the remedies provided in the Lanham Act. 36 U.S.C. § 220506(c)(4).

34.     The protected symbols include the words "Olympic" and "Olympiad," among others, or any combination of these words "tending to cause confusion or mistake, to deceive, or to falsely suggest a connection" with any Olympic activity,

1   and any trademark, trade name, sign, symbol, or insignia falsely representing

2   association with the International Olympic Committee.  36 U.S.C. § 220506(a).

3       35.    The statute establishes that the protection afforded to Olympic symbols

4   is broader than the rights provided under the Lanham Act, effectively providing the

5   USOC with an exclusive right in the Olympic words and symbols.  *San Francisco*

6   *Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 535 (1987).

7       36.    The statute does not require the USOC to prove that a defendant's use

8   is likely to cause confusion, nor does the statute incorporate the defenses that are

9   available under the Lanham Act.  *Id.*  Thus, under the OASA, the USOC has

10  exclusive right to the use of all Olympic symbols and marks, including the official

11  Beijing 2008 emblem, and the word marks "Beijing 2008" and "Olympic."  These

12  exclusive rights under OASA entitle Plaintiffs to injunctive relief here.

13              **2.    Infringement Under the Lanham Act**

14      37.    Until this Court issued a temporary restraining order, Defendants were

15  making unauthorized use of Plaintiffs' marks on their Websites in an effort to

16  mislead consumers into believing that the tickets offered are "official" and that the

17  sites are legitimate and in fact associated with the IOC and USOC.  Such deception

18  of the public is forbidden by Section 32(1) of the Lanham Act.

19      38.    Section 32(1) proscribes the use in commerce of any "reproduction,

20  counterfeit, copy, or colorable imitation of a registered mark in connection with the

21  sale, offering for sale, distribution, or advertising of any goods or services on or in

22  connection with which such use is likely to cause confusion, or to cause mistake, or

23  to deceive."  15 U.S.C. § 1114; *K and N Engineering, Inc. v. Bulat*, 259 Fed. Appx.

24  994 (9th Cir. 2007) (affirming lower court's grant of summary judgment based on

25  determination that defendants' intentional use of plaintiff's mark was likely to

26  cause confusion).

27      39.    Plaintiffs here have shown a significant likelihood of establishing

28  actionable infringement, as they can demonstrate (1) ownership of valid and legally

1   protectable marks; (2) that Defendants "used" those marks "in commerce"; (3) the

2   "use in commerce" was in connection with the sale, offering for sale, distribution,

3   or advertising of goods and services"; and (4) the infringing use was in a manner

4   likely to confuse consumers. 15 U.S.C. § 1114; 15 U.S.C. § 1125(a).

5        40.   First, Plaintiffs' ownership of Reg. No. 3,043,229 for the official

6   emblem for the 2008 Beijing Olympic Games ("Beijing 2008"), Reg. Nos.

7   2,739,492 and 2,764,102; and Reg. Nos. 968,566, 2,311,493, and 2,777,890 for the

8   word OLYMPIC constitute *prima facie* evidence of Plaintiffs' ownership of valid

9   marks. 15 U.S.C. § 1115; *Au-Tomotive Gold, Inc. v. Volkswagon of Am., Inc.*, 457

10   F.3d 1062, 1064 n.2 (9th Cir. 2006).

11        41.   Second, Plaintiffs have shown a significant likelihood of

12   demonstrating that, by using Plaintiffs' marks on the Websites to sell tickets to

13   consumers nationwide, Defendants are making use of the marks in commerce in

14   connection with goods or services. *See Au-Tomotive Gold*, 457 F.3d at 1075.

15        42.   Third, Plaintiffs have shown a significant likelihood of demonstrating

16   the central element of trademark infringement—likelihood of confusion, *i.e.*,

17   whether the similarity of the marks is likely to confuse customers about the source

18   of the products or services. *Brookfield Communications, Inc. v. West Coast*

19   *Entertainment Corp.*, 174 F.3d 1036, 1061 (9th Cir. 1999).

20        43.   In determining likelihood of confusion, courts in this Circuit consider

21   eight factors: (1) strength of the mark; (2) proximity of the goods or services;

22   (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels

23   used; (6) type of goods or services and the degree of care likely to be exercised by

24   the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of

25   expansion. *AMF, Inc. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

26        44.   In this case, each of the factors weighs in favor of Plaintiffs.

27   Collectively, they overwhelmingly demonstrate a likelihood of confusion.

28

45.     Here, there is no question that Plaintiffs' marks are strong.  In fact, the Olympic Marks are so strong that Congress, by passing the OASA, has granted exclusive use of those marks in the United States to the USOC.  The Olympic Marks are entitled to more protection because they are more likely to be remembered and associated in the consumers' minds with their owners.  *Brookfield*, 174 F.3d at 1058 (citations omitted).

46.     Here, because Defendants purport to offer the *same* goods—*i.e.*, tickets to the 2008 Olympic Games—offered by the USOC, through its agents, the parties' goods and services are highly related, and thus this factor also favors Plaintiffs.  *AMF*, 599 F.2d at 350.

47.     There can also be no question that Defendants are making use of trademarks that are identical to, or nearly identical to, Plaintiffs' marks.  Thus, this critical factor weighs in favor of Plaintiffs.  *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1174-76 (9th Cir. 2007).

48.     While proof of actual confusion is not a prerequisite, *Eclipse Associates, Ltd. v. Data General Corp.*, 894 F.2d 1114, 1118-19 (9th Cir. 1990), even *Forbes Traveler*, as set forth in the article attached to the Declaration of Courtney Schneider, believes beijingticketing.com is an official website.[2]  Thus, Plaintiffs have evidence of actual confusion, which "is persuasive proof that future confusion is likely."  *AMF*, 599 F.2d at 352 (citations omitted).  Thus, this factor weighs in Plaintiffs' favor.

49.     "Convergent marketing channels increase the likelihood of confusion." *AMF*, 599 F.2d at 353 (citations omitted).  Where, as here, Plaintiffs and Defendants sell their services to the same pool of customers, advertising in the same media, this factor weighs in Plaintiffs' favor.

---

[2] *See* Schneider Ex. A ("The safest bet is to go through the official ticketing websites, including . . . www.beijingticketing.com, . . .").

50.     Here, the evidence of Defendants' bad faith is overwhelming.  As set forth above, Defendants were deliberately using marks similar to Plaintiffs' Olympic Marks to deceive consumers, stating on their sites that the Websites sell "official tickets" to the Olympic Games, and have also concealed their identities, including by providing false contact information on the sites.

51.     Where the products are identical and the marks are strongly similar, however, the sophistication of buyers cannot be relied on to prevent confusion, and this factor will not mitigate the likelihood of confusion.  *See, e.g.*, *Eclipse Associates*, 894 F.2d at 1118.  Here, because Defendants are offering identical goods using marks that are nearly identical to Plaintiffs', this factor also weighs in favor of a finding of likelihood of confusion.

52.     In assessing likelihood of confusion, "a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing."  *AMF*, 599 F.2d at 354 (citations omitted).

53.     Here, Defendants already purport to sell tickets for the 2008 Olympics, which is precisely the domain of Plaintiffs and their contractually-authorized agents.  Thus, this factor weighs in favor of Plaintiffs.

54.     In sum, consideration of the relevant factors amply demonstrates that Plaintiffs are likely to succeed on their claim that Defendants' attempt to capitalize on the success of Plaintiffs' business by using the same well-known trademarks for the very services that Plaintiffs are already offering in violation of section 32(1) of the Lanham Act.

### 3.     False Endorsement and False Advertising

55.     Plaintiffs have also shown that they are likely to establish that Defendants' conduct constitutes both false endorsement and false advertising under the Lanham Act.  15 U.S.C. § 1125(a)(1)(A); § 1125(a)(1)(B).

1    56.    A false endorsement claim requires a showing that: (1) goods or

2    services were involved; (2) interstate commerce was affected; and (3) there was a

3    false designation of origin or false description of the goods or services.  15 U.S.C.

4    § 1125(a)(1)(A).  In establishing the last factor, the court will look for the plaintiff

5    to show that there is a likelihood of confusion.  *White v. Samsung Electronics*

6    *America, Inc.*, 971 F.2d 1395, 1399 (9th Cir. 1992).

7    57.    As set forth above, Plaintiffs have shown that Defendants are falsely

8    claiming to sell in interstate commerce tickets for the 2008 Beijing Olympics, using

9    Plaintiffs' registered Olympic marks and are claiming to sell "official tickets" to

10   create the misimpression that Plaintiffs endorse or in some way approve of the

11   Websites and authorize the sale of the tickets.

12   58.    Defendants' use is both likely to cause and actually has caused

13   confusion.  Thus, Plaintiffs are likely to prevail with respect to their false

14   endorsement claim.  *See Wendt v. Host Int'l*, 125 F.3d 806, 812 (9th Cir. 1997).

15   59.    To show false advertising, Plaintiffs must show that Defendants:

16   (1) use a false or misleading description of fact or representation of fact in a

17   commercial advertisement about its own or another's product; (2) that has actually

18   deceived or has the potential to deceive a significant portion of the audience; (3) the

19   deception is material in that it is likely to influence the purchasing decision; (4) the

20   defendant caused the statement to enter interstate commerce; and (5) it is likely that

21   some harm will result from the misrepresentation.  15 U.S.C. § 1125(a)(1)(B);

22   *Southland Sod Farms v. Stoner Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  The

23   Ninth Circuit also requires that the plaintiff show that the injury was "competitive,"

24   *i.e.*, harmful to the plaintiff's ability to compete with the defendant.  *Smith v.*

25   *Montoro*, 648 F.2d 602 (9th Cir. 1981).

26   60.    Plaintiffs have shown a significant likelihood that they will prevail on

27   the merits of their false advertising claim.  Plaintiffs have shown a competitive

28

1    injury, as Defendants' conduct impacts Plaintiffs' ability to sell tickets to the
2    Olympic games. *Id.*

3       61.    Plaintiffs have also shown that Defendants are falsely claiming that
4    they are selling *bona fide* tickets to the Olympic Games and using Plaintiffs' marks
5    and other symbols to lead consumers to falsely think that the sites are legitimate
6    and that the goods are authentic. *Pepsico, Inc. v. Plank*, 2002 U.S. Dist. LEXIS
7    14378, *13 (C.D. Ca. Jul. 18, 2002). This constitutes false advertising.

8              **4.    The Anti-Cybersquatting Consumer Protection Act**

9       62.    A defendant is liable under the ACPA to the owner of a protected mark
10   if it has: (1) a bad faith intent to profit from that mark and (2) registers, traffics in,
11   or uses a domain name that (3) is identical or confusingly similar to plaintiff's
12   mark, or protected by special legislation. 15 U.S.C. § 1125(d)(1)(A).

13      63.    As set forth above, Defendants have registered and used domain names
14   incorporating "Olympics" and "Beijing 2008," which are (1) protected by reason of
15   36 U.S.C. § 220506 and (2) identical, confusingly similar to, and dilutive of
16   Plaintiffs' registered trademarks. Plaintiffs also have shown that Defendants have a
17   bad faith intent to profit from their use of these marks, which they have used with
18   the intent of financially benefiting from consumers seeking legitimate online
19   locations for sales of authorized Olympic tickets.

20      64.    Such conduct harms, for commercial gain, the goodwill represented by
21   the marks by creating a likelihood of confusion as to source, sponsorship,
22   affiliation, or endorsement of the Defendants' Websites. *See Johnson v. Connolly*,
23   2007 U.S. Dist. LEXIS 31721, *7-8 (N.D. Ca. Apr. 18, 2007).

24      65.    Thus, Plaintiffs have shown a likelihood of success on their claim for
25   cybersquatting.

26             **5.    Unfair Competition**

27      66.    California's Unfair Competition Law ("UCL") proscribes any "unfair
28   or fraudulent business act or practice and unfair, deceptive, untrue or misleading

advertising." Cal. Bus. & Prof. Code, § 17200. A business practice is unlawful "if it is forbidden by any law." *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (Cal. 2003). The UCL is "intended to protect competitors as well as consumers from unfair practices." *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303, 315 (Cal. 2003).

67.    By defining unfair competition to include *any* "unlawful . . . business act or practice," a plaintiff can establish a cause of action of unfair competition under the UCL by demonstrating that the defendant violated other laws through its business practices. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (Cal. 2002). "To prevail on a false advertising or false designation of origin claim, a plaintiff need only show that members of the public are likely to be deceived." *Id.*; *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (Cal. Ct. App. 2006).

68.    Based on the facts set forth above, Plaintiffs are significantly likely to prevail on their claims under the UCL, as Defendants are deceiving the public about their affiliation with Plaintiffs and the legitimacy of the tickets they are advertising for sale.

**B.    Irreparable Harm**

69.    In trademark infringement actions, the Ninth Circuit has held that once the plaintiff has established a likelihood of confusion, irreparable harm is presumed. *GoTo.com*, 202 F.3d at 1209. This is because it is reasonable for the court to assume that continuing infringement will leave the plaintiff with a loss of control of its reputation and a loss of its goodwill. *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 526 (9th Cir. 1984).

70.    Because of their likely success on the merits, Plaintiffs are entitled to a presumption of irreparable harm.

71.    Even absent the presumption, Plaintiffs have shown irreparable injury in the absence of an injunction. Prior to the issuance of the temporary restraining order, Defendants were usurping Plaintiffs' well-established brand name and good

1    will and causing consumers to misidentify Plaintiffs with Defendants' fraudulent

2    Websites. *See id.*, 725 F.2d at 526 (irreparable injury results from continuing

3    infringement based on loss of control over reputation and a loss of goodwill).

4         72.    Significantly, Defendants were also leading consumers to believe that

5    Defendants are associated with or approved by Plaintiffs when they were not. Such

6    an association between Plaintiffs and Websites that are aimed at deceiving the

7    public tarnishes Plaintiffs' image and threatens to turn the public off to the

8    Olympics in general. *See Brookfield*, 174 F.3d at 1066.

9         73.    In addition to these obvious harms, a significant source of irreparable

10   injury lies in the fact that Defendants are lessening the value of Plaintiffs'

11   intellectual property, on which Plaintiffs rely for revenue, and harming Plaintiffs'

12   relationships with their sponsors, consumers and other third parties. By making use

13   of Plaintiffs' marks as set forth herein, Defendants' conduct diminishes the value of

14   these rights.

15        74.    Thus, Plaintiffs will be irreparably harmed without an injunction.

16   **C.    The Balance of Hardships**

17        75.    Because Plaintiffs have shown that they are likely to succeed on the

18   merits and that they are likely to suffer irreparable injury absent an injunction, it is

19   not necessary for the Court to consider whether the balance of hardships tips

20   decidedly in favor of Plaintiffs and whether there are fair grounds for litigation. *See*

21   *GoTo.com*, 202 F.3d at 1209.

22        76.    Nevertheless, Plaintiffs can satisfy the alternate test as well: as

23   discussed above, there are fair grounds for litigation, and the balance of hardships

24   weighs strongly in Plaintiffs' favor. As set forth above, if the Court allows

25   Defendants to continue to use Plaintiffs' marks in connection with their suspect

26   business venture, Plaintiffs will be irreparably injured. *See Apple Computer*, 725

27   F.2d at 526.

28

1        77.    In contrast, Defendants have no legitimate business interest to protect,

2    but rather have built a business on deliberately infringing conduct.  Where the

3    intent to infringe is clear, even if the defendant's entire business was built upon the

4    infringing mark, the balance of hardships weighs in favor of the plaintiff.  *Apple*

5    *Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (if

6    reliance on infringing activity barred issuance of injunction, "a knowing infringer

7    would be permitted to construct its business around its infringement, a result we

8    cannot condone.").

9        **D.**    **Public Interest**

10        78.    In addition to the concerns of Plaintiffs and Defendants, this Court

11    may also consider the public interest in the balance of hardships in an unfair

12    competition suit.  *See Brookfield*, 174 F.3d at 1066.

13        79.    Thus, because consumers are being led to believe there is a

14    relationship between Plaintiffs and Defendants, when in reality none exists, and

15    consumers are at risk of being defrauded, the public interest militates against

16    allowing Defendants to continue to confuse consumers in this fashion.  *See V.E.W.,*

17    *Ltd. v. Karla Hour Couture*, 1997 U.S. Dist. LEXIS 22742 (N.D. Ca. Dec. 16,

18    1997).

19        80.    If any of the foregoing conclusions of law are deemed to be findings of

20    fact, they shall be incorporated herein as factual findings by this Court as though

21    fully set forth as such.

22

23                   **AMENDED [PROPOSED] ORDER**

24        On August 22, 2008, this Court conducted a hearing on Plaintiffs'

25    motion for preliminary injunction.  After full consideration of all papers filed in

26    support of Plaintiffs' motion and all evidence presented at the hearing, and having

27    granted Plaintiffs' motion for a temporary restraining order on July 24, 2008, the

28    Court finds that there is **GOOD CAUSE** appearing to **GRANT** Plaintiffs' Order

for Preliminary Injunction, and finds as follows:

      1.    Plaintiffs have met their burden of demonstrating that they are likely to succeed on the merits of their claims against Defendants;

      2.    There is a reasonable inference that unless enjoined, Defendants will continue to use Plaintiffs' trademarks to deceptively market and solicit sales of tickets to the 2008 Olympic Games in Beijing;

      3.    Defendants have caused and, if permitted to continue such conduct unrestrained, Defendants will likely continue to cause, irreparable damage and harm to Plaintiffs;

      4.    The harm to Plaintiffs if a Preliminary Injunction is not granted far outweighs any harm that Defendants may suffer if it is granted;

      5.    The relief Plaintiffs request is in the public interest.

## **PRELIMINARY INJUNCTION**

**IT IS HEREBY ORDERED** that Defendants and all persons and/or entities acting on their behalf, for their benefit or in active concert or participation with them are **HEREBY ENJOINED** as follows:

      1.    They shall not display (1) the word mark OLYMPIC, U.S. Trademark Registration Nos. 968,566, 2,311,493 and 2,777,890; (2) the word mark BEIJING 2008, U.S. Trademark Registration Nos. 2,739,492 and 2,764,102; or (3) the official emblem of the Beijing 2008 Olympic Games, U.S. Trademark Registration No. 3,043,229, or any part or variation thereof (the "Olympic Marks"), or any terms that are confusingly similar thereto, on the Websites www.olympic-tickets.net, www.beijingticketing.com, www.beijingolympic2008tickets.com, www.beijingolympictickets2008.com, www.olympicticketsbeijing2008.com, www.2008-0lympics.com; and www.buy-olympic-tickets.co.uk or any other Website;

1           2.      They shall not directly or indirectly infringe the Olympic Marks

2  in any manner including, but not limited to, by using them in advertising or offering

3  for sale any tickets or other goods or services using said trademarks;

4           3.      They shall not engage in any conduct that tends falsely or

5  misleadingly to represent that the actions of Defendants, the tickets sold by

6  Defendants, or Defendants themselves are connected with Plaintiffs or

7  organizations guided by the Olympic Charter, including the IOC, the USOC, the

8  international sports federations, and the other National Olympic Committees,

9  Organizing Committees of the Olympic Games and local clubs and the persons

10  belonging to them (the "Olympic Movement"), are sponsored, approved, or

11  licensed by Plaintiffs or the Olympic Movement, or are in some way connected or

12  affiliated with Plaintiffs or the Olympic Movement, or that is likely to confuse,

13  mislead, or deceive members of the public, into believing Plaintiffs and Defendants

14  to be the same;

15           4.      They shall not affix, apply, annex, or use in connection with

16  tickets or any other goods or services, a false description or representation,

17  including words or other symbols, tending to falsely describe or represent such

18  goods or services as being those of Plaintiffs;

19           5.      They shall not otherwise compete unfairly with Plaintiffs in any

20  manner;

21           6.      The following domain names shall remain impounded so that

22  neither Defendants nor the consuming public can gain access thereto:

23  www.olympic-tickets.net, www.beijingticketing.com,

24  www.beijingolympic2008tickets.com, www.beijingolympictickets2008.com,

25  www.olympicticketsbeijing2008.com, www.2008-0lympics.com; and www.buy-

26  olympic-tickets.co.uk;

27           7.      Defendants shall no longer continue to operate the following

28  Websites under the current domain names or under any other domain name:

1   www.olympic-tickets.net, www.beijingticketing.com,

2   www.beijingolympic2008tickets.com, www.beijingolympictickets2008.com,

3   www.olympicticketsbeijing2008.com, www.2008-0lympics.com; and www.buy-

4   olympic-tickets.co.uk; and

5          8.    They shall not effect assignments or transfers, form new entities

6   or associations or utilize any other means or device for the purpose of

7   circumventing or otherwise avoiding prohibitions set forth herein.

8

9          **IT IS SO ORDERED.**

10      Dated:      February 19 , 2009

11

12        By: _____

13             United States District Court Judge

14  SF1:754558.1

15

16

17

18

19

20

21

22

23

24

25

26

27

28